# STATE OF OREGON,
*Respondent,*

*v.*

# CARL GERALD BLAIR,
*Petitioner.*

(TC B46-293, CA 12166, SC 26079)

601 P2d 766

Michael F. Fox, of Hoffman, Morris, Van Rysselberghe & Giustina, Eugene, argued the cause and filed a brief for petitioner.

Jonathan H. Fussner, Assistant District Attorney, Eugene, argued the cause for respondent. With him on the brief was J. Pat Horton, District Attorney.

LINDE, J.

## LINDE, J.

Defendant was charged with committing the crime of "harassment" by means of telephone calls to named persons in a manner both intended and "likely to cause annoyance and alarm," contrary to ORS 166.065(1)(c). The district court sustained defendant's demurrer to the complaint on the ground that the statute is unconstitutionally vague. On the state's appeal, the Court of Appeals reversed, 38 Or App 90, 588 P2d 1132 (1979), citing its prior holding in *State v. Larsen,* 37 Or App 425, 588 P2d 41 (1978), in which it had undertaken to save the validity of the statute by giving it a limiting construction. We allowed review to consider whether the recognized flaws in the statute as written are fatal or can be judicially repaired. We conclude that the task calls not for judicial construction but for legislative reconstruction and therefore reverse.

ORS 166.065(1)(c) is one of four descriptions of the crime of "harassment." Subsection (1) as a whole provides:

"A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he:

"(a) Subjects another to offensive physical contact; or

"(b) Publicly insults another by abusive or obscene words or gestures in a manner likely to provoke a violent or disorderly response; or

"(c) Communicates with a person, anonymously or otherwise, by telephone, mail or other form of written communication, in a manner likely to cause annoyance or alarm; or

"(d) Engages in a course of conduct that alarms or seriously annoys another person and which serves no legitimate purpose."

Defendant's attack on paragraph (c) takes two forms. Because the paragraph undertakes to forbid *communication* with another in the manner described,

[521]

he invokes the protection of the constitutional guarantees against laws restricting freedom of speech.[1] Even apart from this, he asserts that the prohibition fails to "give fair warning of the nature of the conduct declared to constitute an offense," ORS 161.025(1)(c), thus falling short of due process under the 14th amendment, and that it fails to confine the discretion of a trial court or jury, thus abdicating to them the legislative power to define a crime and letting them do so after the fact, contrary to article III, section 2 and article I, section 21 of the constitution.[2] This court recognized the latter requirement that criminal offenses be adequately specified in legislation in *State v. Hodges,* 254 Or 21, 457 P2d 491 (1969), when it stated:

> "A law that permits the judge and jury to punish or withhold punishment in their uncontrolled discretion is defective as much for its uncertainty of adjudication as for its failure to notify potential defendants of its scope and reach.

---

[1] Or Const art I, § 8:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

We have recently held that the qualification to "be responsible for abuse of this right" refers to civil remedies for injuries to another, such as the injury to reputation, art I, § 10, but excludes punishment, *Wheeler v. Green,* 286 Or 99, 118-119, 593 P2d 777 (1979). *Cf. Macca v. Gen. Telephone Co. of N.W.,* 262 Or 414, 495 P2d 1193 (1972) (private nuisance); *Turman v. Central Billing Bureau,* 279 Or 443, 568 P2d 1382 (1977) (intentional infliction of emotional distress).

US Const amend 1 (applied to the states by the 14th amendment): "Congress shall make no law . . . abridging the freedom of speech, . . ."

[2] Or Const art III, § 1:

"The powers of the Government shall be divided into three seperate [*sic*] departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided.

Or Const art I, § 21:

"No *ex post facto* law . . . shall ever be passed, . . ."

"... A vague statute lends itself to an unconstitutional delegation of legislative power to the judge and jury, and, by permitting the jury to decide what the law will be, it offends the principle, if not the rule, against *ex post facto* laws. See Oregon Constitution, Art I, §21."

254 Or at 27.[3]

We recognize that defendant's first argument is by no means trivial. It is serious enough to prevent an easy refinement of the statute by reading into it qualifying adjectives such as that the communication must be "offensive" or "obscene," for freedom of speech does not exclude expressions that are "offensive" or "obscene" in the sense of vulgar. *See Cohen v. California,* 403 US 15, 91 S Ct 1780, 29 LEd2d 284 (1971); *Gooding v. Wilson,* 405 US 518, 92 S Ct 1103, 31 LEd2d 408 (1972); *Lewis v. New Orleans,* 415 US 130, 94 S Ct 970, 39 LEd2d 214 (1974). No doubt the difficulty is sharpened by the fact that ORS 166.065(1)(c) expressly makes the gravamen of the offense that the offender *communicates* rather than that he subjects the victim to some defined injury, of which the communication is only the means employed in the particular case. A statute that does not in its own terms forbid speech or other communication still would require sensitive confinement within constitutional limits, but it is less vulnerable to constitutional attack on its face.

But in any event, we find that paragraph (c) itself communicates either too little or too much, apart from the claimed restraint of freedom of speech. The state and the Court of Appeals rely on the requirement of a

---

[3] Defendant cites the following quotation to show that case-by-case determination of the reach of a criminal statute may also fall short of due process under the 14th amendment:

"[A] law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves . . . judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case. . . ."

*Giaccio v. Pennsylvania,* 382 US 399, 402-403, 86 S Ct 518, 15 L Ed 2d 447 (1966).

specific intent to "harass, annoy or alarm another person" to save the statute from impermissible vagueness. But specification of the element of intent does nothing to define what someone who wishes to harass, annoy or alarm another may not do in pursuit of that disagreeable aim. True enough, his intent makes his defense of lack of fair notice less appealing, but it does not meet it; and the argument fails to address the other reasons mentioned above for requiring legislative specification of crimes.

Examination of paragraph (c) shows that the communication proscribed by the statute need not cause any harm at all, in the form of annoyance, alarm, or otherwise. It is sufficient if the manner of communication is in fact "likely" to do so, whether the defendant knew this or not. Messages that are likely to cause "annoyance" or "alarm" are almost limitless; we will not burden this opinion with hypothetical examples of letters from creditors, employers, angry parents, disappointed customers, jealous lovers, or followers of opposing athletic teams that could theoretically lead to filing a criminal complaint. Nor is the statute limited to intentionally causing or attempting to cause another such actual distress after knowing, from an earlier attempt or otherwise, that one's act will do so, and without any legitimate purpose. Yet the elements of actual alarm or "serious" annoyance and lack of legitimate purpose were required in paragraph (d), above, which the Court of Appeals held inadequate to provide standards capable of consistent application. *State v. Sanderson,* 33 Or App 173, 176-177, 575 P2d 1025 (1978).

This is not the place to suggest how to write a valid statute or whether the foregoing elements would suffice, and we intend no such implication. We mention them only to point out that in enacting ORS 166.065(1) the Legislative Assembly expressed a policy of protecting persons against imposition of annoyance and alarm, but it did not face up to the difficult question of

exactly how far and against what kind of conduct it intended to extend that protection. A policy so expressed may well be adequate guidance for an administrative agency, but it is not adequate for criminal law enforcement. The district court correctly sustained defendant's demurrer.

Reversed.