Argued and submitted October 8, 1986, Court of Appeals affirmed and trial court reversed February 10, 1987

STATE OF OREGON,
*Petitioner on review,*

*v.*

RONALD GILBERT RAY,
*Respondent on review.*

(CC B66-078; CA A34281; SC S32986)

733 P2d 28

Linde, J., filed a concurring opinion.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for petitioner on review. Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Virginia L. Linder, Assistant Solicitor General, Salem, filed the petition for review.

Timothy J. Sercombe, of Harrang, Swanson, Long & Watkinson, Eugene, and Rex Armstrong, Portland, argued the cause for respondent on review.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

JONES, J.

Linde, J., filed a concurring opinion.

## JONES, J.

Defendant was charged by complaint with the crime of harassment under ORS 166.065(1)(e). He filed a written demurrer to the complaint on the grounds that the statute was unconstitutionally vague and overbroad on its face. The district judge overruled the demurrer and defendant was convicted in a stipulated facts trial to the court. The Court of Appeals reversed the district court, citing *State v. Henry,* 78 Or App 392, 717 P2d 189 (1986), which invalidated a prohibition against alleged "obscene" publications on vagueness grounds.

■    We agree with the Court of Appeals that this telephone harassment statute is unconstitutionally vague, but it also suffers from overbreadth. We are unable to excise the unconstitutional language in the statute's definitions and treatment of obscenity or to restrict the statute's overbreadth language. As presently written, ORS 166.065(1)(e) violates Article I, section 8, of the Oregon Constitution.

ORS 166.065(1)(e) provides:

"A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, the actor:

"* * * * *

"(e) Subjects another to alarm or annoyance by telephonic use of obscenities or description of sexual excitement or sadomasochistic abuse or sexual conduct as defined in ORS 167.060 including intercourse, masturbation, cunnilingus, fellatio, or anilingus, which use or description is patently offensive and otherwise obscene as defined in ORS 167.087(2)(b) and (c); * * * "[1]

---

[1] Those definitional portions of ORS 167.060 which are relevant to paragraph (e) of the harassment statute are as follows:

"(7) 'Obscenities' means those slang words currently generally rejected for regular use in mixed society, that are used to refer to genitals, female breasts, sexual conduct or excretory functions or products, either that have no other meaning or that in context are clearly used for their bodily, sexual or excretory meaning.

"* * * * *

"(9) 'Sadomasochistic abuse' means flagellation or torture by or upon a person who is nude or clad in undergarments or in revealing or bizarre costume, or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed.

"(10) 'Sexual conduct' means human masturbation, sexual intercourse, or

ORS 167.087(2)(b) and (c) provide that a matter is obscene if:

"(b) The average person applying contemporary state standards would find the work, taken as a whole, appeals to the prurient interest in sex; and

"(c) Taken as a whole, it lacks serious literary, artistic, political or scientific value."

ORS 166.065(1)(e) is not beyond the power of the legislature to enact against a challenge under Article I, section 8, that the statute in terms is directed against speech, because the statute prohibits causing a specified effect, that is, harm to a victim rather than the substance of the communication as such. This court said in *State v. Robertson,* 293 Or 402, 416-17, 649 P2d 569 (1982), that:

"article I, section 8, prohibits lawmakers from enacting restrictions that focus on the content of speech or writing, either because that content itself is deemed socially undesirable or offensive, or because it is thought to have adverse consequences. * * * [L]aws must focus on proscribing the pursuit or accomplishment of forbidden results rather than on the *suppression of speech or writing either as an end in itself or as a means to some other legislative end.* * * *"

ORS 166.065(1)(e) is directed against the accomplishment of a forbidden result, *i.e.,* the "alarm or annoyance" of "another person." The intent of the legislature in drafting this statute was to protect persons from actual injury, not to restrict the content of speech. Frank Gruber, Deputy Legislative Counsel, testified before the Senate Committee on Justice that this statute requires that the person subjected to the unwanted and unsolicited telephone call be subjected to shock, annoyance and alarm rather than just putting focus on communication. Minutes, Senate Committee on Justice, February 11, 1981, p 19 (testimony of Frank Gruber, Deputy Legislative Counsel).

---

any touching of the genitals, pubic areas or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification.

"(11) 'Sexual excitement' means the condition of human male or female genitals or the breasts of the female when in a state of sexual stimulation, or the sensual experiences of humans engaging in or witnessing sexual conduct or nudity."

Oregon's earlier harassment statute forbidding some types of telephone calls was constitutionally inadequate because it did not require an "effect" on the listener and the prohibited conduct was not narrowly defined. ORS 166.065(1)(c) (1979); *State v. Blair,* 287 Or 519, 601 P2d 766 (1979). The 1981 legislature attempted to cure these defects by amending the statute, which now mandates that the listener must suffer the psychic injury of alarm or annoyance by the use of certain sexually explicit language. Or Laws 1981, ch 468, § 1. A law may protect against physical or financial harm and may equally protect against psychic or emotional harm; this statute proscribes conduct in the form of speech that produces emotional harm. As we said in *State v. Moyle,* 299 Or 691, 699, 705 P2d 740 (1985):

> "Some kinds of prohibitions may violate Article I, section 8, even if written in terms of 'harms' rather than speech or writing. The constitutional prohibition against laws restraining speech or writing cannot be evaded simply by phrasing statutes so as to prohibit 'causing another person to see' or 'to hear' whatever the lawmakers wish to suppress. In principle, legislative power to select the objectives of legislation is plenary, except as it is limited by the state and federal constitutions. Except for these limitations, legislative power extends to protecting persons against harmful conduct by others, or whatever the legislature regards as harmful. It extends to protection against psychic or emotional as well as physical or financial harms. * * *"

In *Moyle* we went on to caution that a difficulty arises "when a statute defines a crime in terms of causing a kind of harm which necessarily results only from speech or writing, so that the statutory definition is only the other side of the coin of a prohibition of the speech or writing itself." *Id.*

*Moyle* involved ORS 166.065(1)(d). This case involves subsection (1)(e) of the same statute. By analogy, what we said in *Moyle* applies here. ORS 166.065(1)(e) does not run afoul of Article I, section 8, because the effect that it proscribes—causing psychic injury to persons—merely mirrors a prohibition of words themselves. The statute prohibits causing this effect specifically by words. Annoying verbal communication causing injury is a central element in the definition of the crime. If the statute potentially reaches substantial areas of communication that would be constitutionally

privileged and that cannot be excluded by a narrowing interpretation left to a case-by-case defense against the application of the statute, it would be unconstitutional. Therefore, the statute must be scrutinized to determine whether it appears to reach privileged communication or whether it can be interpreted to avoid such overbreadth.

As this court said in *Robertson,* 293 Or at 410,

"It should be kept in mind that the terms 'overbroad' and 'overbreadth' are not themselves terms of the state or federal constitutions, any more than the terms 'vague' or 'vagueness'; they are only lawyers' phrases for shortcomings that are claimed to contravene other constitutional constraints. They have been used by different theorists and courts to mean different things and to carry different consequences. *See* Monaghan, *Overbreadth,* 1981 Sup Ct Rev 1 (1981). In principle, however, a claim of 'overbreadth' asserts that the terms of a law exceed constitutional boundaries, purporting to reach conduct protected by guarantees such as, for instance, Oregon Constitution, article I, section 8 (freedom to speak and write) * * *."

The *Robertson* court then quoted *State v. Blocker,* 291 Or 255, 261, 630 P2d 824 (1981):

" 'An "overbroad" law, as that term has been developed by the United States Supreme Court, is not vague, or need not be. Its vice is not failure to communicate. Its vice may be clarity. For a law is overbroad to the extent that it announces a prohibition that reaches conduct which may not be prohibited. A legislature can make a law as "broad" and inclusive as it chooses unless it reaches into constitutionally protected ground. The clearer an "overbroad" statute is, the harder it is to confine it by interpretation within its constitutionally permissible reach.' " *Robertson,* 293 Or at 410.

This court then pointed out in *Robertson,* 293 Or at 412, that a narrowing construction may save a statute attacked as "overbroad" by legally excising the superfluous language of the statute. If the law passes the test with its narrowed construction, it does not violate any freedom to speak as provided by Oregon Constitution, Article I, section 8. However, this telephone harassment statute is hopelessly overbroad. We cannot write into the statute absent words that the proscribed conduct must necessarily be restricted to unwanted, unsolicited or nonconsensual telephone calls. The

proscribed conduct is not even restricted to the person placing the call. In other words, someone who received a consensual, innocuous call could violate this statute by engaging in the proscribed conduct. The statute could prohibit calls between spouses, lovers or friends that may from time to time cause annoyance and consensual calls from legitimate polling organizations collecting data on attitudes pertaining to sexual matters. Further, the language of this statute could proscribe legitimate calls from physicians to patients dealing with sexual matters, *e.g.,* AIDS caused by oral or anal sex, which cause alarm.

■ In addition to being overbroad, this statute is freighted down with unconstitutional language that destroys its vitality because of vagueness. Some definitions contained in the quoted subsections may be specific enough to pass constitutional muster against one challenge of vagueness; that is, portions of the statute may not be vague for lack of definition in failing to warn a person that certain types of conduct will subject the offender to criminal prosecution and sanctions. But the fatal vagueness in the statute is its reference to ORS 167.087(2)(b) and (c), which provide that a matter is obscene if, taken as a whole, the average person applying contemporary state standards would find the work appeals to the prurient interest in sex and it lacks serious literary, artistic, political or scientific value. Those definitions are an unconstitutional delegation of legislative power to a judge or jury, permitting a judge or jury to decide what the law will be, hinging on a case-by-case adjudication. In a law censoring speech such an indeterminate test is intolerable. *State v. Henry,* 302 Or 510, 513, 732 P2d 9 (1987).

The Court of Appeals is affirmed. The trial court is reversed.

**LINDE, J.,** concurring.

The Court rightly confines itself to affirming that ORS 166.065(1)(e) is invalid, as the Court of Appeals held. But because that section itself was an effort to rewrite the telephone harassment statute that was held to violate Article I, section 8, of the Oregon Constitution in *State v. Blair,* 287 Or 519, 601 P2d 766 (1979), legislators may be led to conclude that no law at all can be passed to deal with abusive telephone calls. This is not necessarily so.

For instance, under some circumstances a person engaging in verbally abusive conduct can be held liable in tort if his or her identity is known, which of course is necessary for any sanction. *See, e.g., Turman v. Central Billing Bureau,* 279 Or 443, 568 P2d 1382 (1977)(abusive debt collection telephone calls found to be intentional infliction of emotional distress). There is no obvious reason why the state cannot assist persons so injured to a specified compensatory damages remedy rather than leaving them to pursue a tort remedy entirely on their own. Abuse of speech under Article I, section 8, that injures another's person, property, or reputation, Article I, section 10, can be a tort even when it cannot be punished as a crime.[1] Moreover, modern telephone technology gives rise to other problems of possible abuse besides offensive communications and may permit types of regulation whose validity is not prejudged in this case.

The almost invariable legislative impulse when seeking to make harmful behavior "unlawful" is to turn to the criminal law. I mean no more than to suggest that when the state's object is to help victims of abusive behavior, criminal law is not the only choice.

---

[1] Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Article I, section 10, of the Oregon Constitution provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

*See Hall v. The May Dept. Stores,* 292 Or 131, 637 P2d 126 (1981); *Wheeler v. Green,* 286 Or 99, 593 P2d 777 (1979).