Argued and submitted February 27, 1991; resubmitted In Banc May 5, reversed and remanded for new trials May 19, 1993

STATE OF OREGON,
*Respondent,*

*v.*

STEPHEN R. MEYER,
*Appellant.*

(CM 89-0177, CM 89-0179, CM 89-0180;
CA A61964 (Control), A61965, A61966)
(Cases Consolidated)
852 P2d 879

Ingrid A. MacFarlane, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Ann Kelley, Assistant Attorney General, Salem.

ROSSMAN, J.

Durham, J., concurring in part; dissenting in part.

## ROSSMAN, J.

Defendant appeals his convictions for possession of a controlled substance, ORS 475.992(4)(b), dealing in depictions of a child's sexual conduct, ORS 163.673, and using a child in a display of sexually explicit conduct, ORS 163.670. He assigns error to the court's denial of his motion to suppress[1] and to the overruling of his demurrer to the indictments charging violations of ORS 163.673 and ORS 163.670.

At 7:45 a.m., on January 27, 1989, Deputy Stephens, U.S. Marshall Barr and 4 other officers executed a warrant for the arrest of defendant for a federal narcotics violation. The officers considered it a high risk operation. Stephens knocked on the door of defendant's residence and yelled, "Police, arrest warrant." Barr tried the door knob and, finding it locked, kicked in the glass door. Deputy Eastham entered first, followed by Stephens and Barr. All of them were carrying weapons. Outside, two other officers guarded the other doors to the house. The officers found defendant and his wife in the doorway between their bedroom and the kitchen. Defendant was naked, and his wife wore only a robe. Eastham pointed his pistol at the couple and ordered them to lie on the floor. Both were then handcuffed with their hands behind their backs, facing the floor. Barr told defendant that he had a federal warrant for his arrest, but did not present it and did not give *Miranda* warnings to either defendant or his wife.

Stephens and Deputies Downing and Chilcote conducted a "security sweep" of the house, the attic crawlspace and outbuildings for weapons and other persons. Stephens saw some rifles on the closet wall in a spare room and seized them. At some point while defendant's wife was still on the floor, Barr shouted "Fuck you" at her, apparently in response to her question about her cat. Defendant and his wife answered questions about the location of other firearms. About 20 minutes after the initial entry and the discovery and seizure of numerous weapons, defendant was allowed to dress and was then taken to the police car.

---

[1] The three cases were consolidated on appeal, because they were heard together on the motion to suppress, were sentenced together and present some identical issues on appeal.

Barr moved defendant's wife, still handcuffed, to the sofa and explained that he had no warrant for her arrest. Without advising her of her rights, he asked if there were any other weapons. She said that she thought that her husband had a gun in the car that was parked in front of the house and, when the officers asked whether they could search the car, she said, "Sure."[2] Barr went to the squad car and told defendant that his wife had granted permission to "look through" the car for a weapon. Defendant told him that there was a .45 pistol under the front seat. Barr looked there but could not find it. He told that to defendant, who said that it was "there somewhere." Barr returned and conducted a more intensive search, during which he found two metal suitcases and a cloth satchel about the size of a briefcase. He opened the metal cases and found only camera equipment. He then opened the satchel and found a black plastic box, variously described as being 8 × 12 × 2 inches or 5 × 7 × 2 inches. Barr testified that, although the box did not look like a weapon container, he thought that it could have contained the gun, so he opened it. In it, he found proof sheets of photographs of a child under 18, a few of which revealed her genitals and anus. Those pictures formed the basis for two of defendant's convictions. Stephens and Eastham read defendant his *Miranda* rights as they drove him to the county jail; Chilcote, Downing and Barr remained with defendant's wife as defendant was driven away.

During the ensuing investigation, the photographed child's statement was taken, and a warrant was obtained for the search of defendant's residence for other pictures. When the officers executed the warrant, they did not find any other pictures but did find methamphetamine in the bedroom, the spare room and the garage shop. That evidence was the basis for defendant's unlawful possession conviction.

Defendant moved to suppress the fruits of the search of his car and all of the evidence seized pursuant to the search warrant that was based on that evidence, contending that it was "fruit of the poisonous tree." He also filed a demurrer, contending that ORS 163.673 and ORS 163.670, under which he was charged, are unconstitutionally vague and overbroad

---

[2] The car was registered jointly in the names of defendant and his wife.

under Oregon Constitution, Article I, section 8,[3] violate Article I, sections 20 and 21,[4] by unlawfully delegating legislative power to the court and jury, and also violate his rights under the Due Process and Equal Protection Clauses of the federal constitution.[5] The trial court overruled the demurrer and denied the motion to suppress. If defendant's demurrer should have been sustained, the charges under ORS 163.673 and ORS 163.670 should have been dismissed. Accordingly, we consider that question first.

ORS 163.673 provides, in part:

"(1)   A person commits the crime of dealing in depictions of a child's sexual conduct if the person knowingly:

"(a)   Develops, duplicates, publishes, prints, disseminates, exchanges, displays, finances, attempts to finance, or sells any photographs or other visual recording that depicts a child under 18 years of age in an act of sexually explicit conduct."

ORS 163.670 provides, in part:

"(1)   A person commits the crime of using a child in a display of sexually explicit conduct if the person employs, authorizes, permits, compels or induces a child under 18 years of age to participate or engage in sexually explicit conduct for any person to observe or to record in a photograph or other visual recording."

---

[3] Article I, section 8, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

[4] Article I, section 20, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Article I, section 21, provides, in relevant part:

"No *ex post facto* law * * * shall be passed * * *."

[5] The Fourteenth Amendment to the United States Constitution provides, in pertinent part:

"No State shall * * * deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

ORS 163.665 provided,[6] in part:

" 'Sexually explicit conduct' means actual or simulated * * * (6) *Lewd exhibition* of genitals or anus." (Emphasis supplied.)

We consider state constitutional questions before reaching federal questions. *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983). Defendant's primary argument is that the phrase "lewd exhibition" is unconstitutionally vague. Although the indictment charging defendant with violating ORS 163.670 does not allege what "sexually explicit conduct" he induced the child to engage in, the charges under ORS 163.673 do allege conduct: "lewd exhibition of the genitals and anus." Defendant demurred to both indictments, and the state has not distinguished between them in responding. Apparently, the state concedes that the "sexually explicit conduct" involved in both charges is the same and presents the same question concerning vagueness. Accordingly, we will treat them that way.

■■ To withstand a vagueness challenge, the terms of a criminal statute "must be sufficiently explicit to inform those who are subject to it of [sic] what conduct on their part will render them liable in penalties." *State v. Graves*, 299 Or 189, 195, 700 P2d 244 (1985); *State v. Knobel*, 97 Or App 559, 563, 777 P2d 985, *rev den* 309 Or 522 (1989). Terms need not be defined so precisely that, in every instance, a person can predict that a specific act or course of conduct will fall within the statute's prohibitions. *State v. Graves, supra,* 299 Or at 195; *State v. Hendrix*, 107 Or App 734, 741, 813 P2d 1115 (1991). A person need only be able to have "a reasonable degree of common understanding" of what is forbidden by the statute. *Cascade Fireworks v. State of Oregon*, 86 Or App 355, 358, 738 P2d 1013 (1987).

When reviewing an assertion of vagueness, it is this court's duty to construe the statute to salvage its constitutionality, if possible. *State v. Cantwell*, 66 Or App 848, 853, 676 P2d 353, *rev den* 297 or 124 (1984). We start from the premise that, "in performing its law-making role, the legislature intends to act within constitutional bounds." *State v. Cornell/Pinnel*, 304 Or 27, 31, 741 P2d 501 (1987). Although

---

[6] Now numbered ORS 163.665(2)(f). Or Laws 1991, ch 664, § 4.

"lewd" is not expressly defined in ORS 163.670 or ORS 163.673, it is a commonly used word that "has an unmistakable meaning which is very well and generally understood."[7] 53 CJS, "Lewdness," § 1; *see also Dictionary of Criminology* 127-28 (1965). Indeed, there is a large body of case law recognizing that the term "lewd," when used in a criminal statute to define an offense, connotes an unlawful indulgence in lust or an eagerness for sexual indulgence. *People v. Babb*, 103 Cal App 2d 326, 330, 229 P2d 843, 846 (1951); *State v. Trombley*, 3 Conn Cir 28 206 A2d 482, 484 (1964); *State v. Jones*, 2 Conn Cir 698, 205 A2d 507, 509 (1964); *Chesebrough v. State*, 255 So 2d 675, 677-78 (Fla 1971); *Buchanon v. State*, 111 So 2d 51, 57 (Fla 1959); *State v. Brenner*, 132 NJL 607, 609, 41 A2d 532, 534 (1945).[8]

Recourse to a dictionary also serves to inform a person of the meaning of "lewd." Although the various dictionary definitions may not be identical, they contain sufficient common elements that indicate with reasonable certainty the nature and character of the conduct forbidden by ORS 163.670 and ORS 163.673.[9] An examination of the definitions discloses that "lewd" refers to sexually motivated conduct; specifically, it imports the excitement of lust or sexual desire and signifies gross indecency in sexual behavior. *See Webster's New World*

---

[7] In upholding the constitutionality of "lewd" against vagueness challenges, the Ninth Circuit and at least one other Federal Court of Appeals has described "lewd" as "a commonsensical term." *U.S. v. Arvin*, 900 F2d 1385, 1388 n 3 (9th Cir 1990); *U.S. v. Reedy*, 845 F2d 239, 241 (10th Cir 1988); *U.S. v. Wiegand*, 812 F2d 1239, 1243 (9th Cir 1987).

[8] "Lewdness" is defined in 53 CJS, "Lewdness," § 2, as

"[T]he irregular indulgence of lust; lustfulness; lecherous, lascivious, or libidinous conduct. It is that form of immorality which has relation to sexual impurity or aberration, and is generally used as indicating gross and wanton indecency with respect to sexual relations."

In 50 Am Jur 2d, "Lewdness, Indecency, etc.," § 1, "lewdness" is described as

"the unlawful indulgence of lust. It signifies that form of immorality which has relation to sexual impurity, and is generally used to indicate gross indecency with respect to sexual relations."

[9] In an attempt to establish that "lewd" is unconstitutionally vague, the dissent asserts that "the variety of dictionary definitions demonstrates that the meaning of 'lewd' is subjective and far from unmistakable." 120 Or App at 337. We do not pretend that the definitions of "lewd" exactly mirror one another. Our position is simply that there is a common thread running through the definitions such that a person of average intelligence could readily ascertain whether his conduct would fall within the statutes' prohibitions. The definition of "lewd" in ORS 163.670 and ORS 163.673 — exciting the lust or sexual desires of the viewer — is wholly consistent with the gist of those definitions and clearly harmonizes with them.

*Dictionary* 812 (2d College ed 1986); *Black's Law Dictionary* 817 (5th ed 1979); *Webster's Third New International Dictionary* 1301 (unabridged 1971).[10] We interpret the phrase "lewd exhibition of the genitals or anus" in ORS 163.670 and ORS 163.673 to mean exhibition with the intent of stimulating the lust or sexual desires of the person who views it.[11]

■    In *Palm Gardens, Inc. v. OLCC*, 15 Or App 20, 31, 514 P2d 888 (1973), we held that the term "lewd,"

> "through its long use in the criminal law, * * * indicates with sufficient specificity the proscribed conduct so that men of ordinary understanding can govern their activities, and, consequently it is not unconstitutionally vague."

---

[10] *Webster's New World Dictionary* 812 (2d College ed 1986) defines "lewd" as "showing, or intended to excite, lust or sexual desire, especially in an offensive way; lascivious." *Webster's Third New World International Dictionary* 1301 (unabridged 1971) defines lewd as "sexually unchaste or licentious: * * * suggestive of or tending to moral looseness: inciting to sensual desire or imagination." *Black's Law Dictionary* 717 (5th ed 1979) says that lewd means "obscene, * * * lustful, indecent, lascivious, lecherous," and it defines lewdness as "[g]ross and wanton indecency in sexual relations; * * * [l]icentiousness; that form of immorality which has relation to sexual impurity."

[11] The trial court's instruction that defined "lewd" for the jury is consistent with our interpretation:

"Lewd — the term lewd or lewd exhibition as used in the law * * * means an exhibition of the [genitals or] anus which is *meant to arouse the sexual gratification of the person observing the exhibition,* or which a reasonable person would know to be an exhibition, *the purpose of which is to arouse the sexual gratification of the person observing the exhibition or photograph.*" (Emphasis supplied.)

Similar language was used to instruct on two elements of the crime of dealing in depictions of a child's sexual conduct:

"And five, defendant knew that the photographs depicted [the child] in a pose showing her vagina or anus *for the purpose of arousing the sexual gratification * * * or the desire of the defendant or persons to whom the photograph would be shown.*

"And six, that the depiction of [the child's] vagina or anus was a pose that a reasonable person would know to be a pose taken *for the purpose of arousing sexual gratification or desire of the person taking the photographs or some other person to whom the photographs would be shown.*" (Emphasis supplied.)

In listing the elements of the crime of using a child in a display of sexually explicit conduct, the court also instructed the jury that the state had to prove beyond a reasonable doubt that

"[t]he taking of the photograph or photographs was done to use the photographs *to arouse the sexual desire or gratification of the defendant or others.*" (Emphasis supplied.)

Clearly, a person would not be prevented from producing or distributing pictures of minor children with their genitalia displayed for the purpose of having the pictures included in a medical textbook or an issue of, say, National Geographic. In those

Although *Palm Gardens* was an administrative law case, the statute there was upheld "under standards governing review of *penal* laws challenged for vagueness." *Korgan v. OLCC*, 72 Or App 31, 36, 695 P2d 81, *rev den* 299 Or 443 (1985). (Emphasis supplied.) Therefore, its holding is persuasive that the phrase "lewd exhibition" is not unconstitutionally vague.[12]

Defendant also contends that ORS 163.670 and ORS 163.673 are overbroad. The crux of his argument is that, "because 'lewd exhibition' has *no definition, no standard for application, and no consistent use*" (emphasis supplied), ORS 163.670 and ORS 163.673 necessarily proscribe conduct that is protected by Article I, section 8. However, a constitutional claim that a statute is defective because it fails to define and communicate its coverage is a claim of vagueness, not overbreadth. *State v. Robertson*, 293 Or 402, 408-10, 649 P2d 569 (1982). Defendant essentially asserts that the statutes are overbroad because they are vague. He has failed to discern that "[v]agueness and overbreadth * * * are not two alternative or cumulative epithets for the same shortcoming." 293 Or at 407. A statute that is overbroad

> "is not vague, or need not be. Its vice is not failure to communicate. Its vice may be clarity. For a law is overbroad to the extent that it announces a prohibition that reaches conduct which may not be prohibited." *State v. Blocker*, 291 Or 255, 261, 630 P2d 824 (1981).

Because we have determined that the phrase "lewd exhibition" is not unconstitutionally vague, and because defendant has failed to demonstrate any other way in which ORS

---

instances, the person would not possess the requisite intent that triggers the statutes' prohibitions. Furthermore, that activity is not the type of sexual exploitation or abuse that is targeted by the statutes.

[12] The dissent contends that "lewd" is unconstitutionally vague because the term "obscene" has been found to suffer from that constitutional infirmity. 120 Or App at 337; *see State v. Ray*, 302 Or 595, 733 P2d 28 (1987); *State v. Henry*, 302 Or 510, 732 P2d 9 (1987). The foundation of its argument lies in its assertion that in *State v. Henry, supra*, the Supreme Court "observed that the term 'lewd' has functioned as a synonym for the vague term 'obscene[.]' " 120 Or App at 337. That observation made by the *Henry* court does not lend credence to the dissent's position. In holding that the term "obscene" was vague, the *Henry* court merely recognized that the definition of "obscene" was varied and unsettled and noted that " ' 'blasphemous,' 'profane,' 'immoral,' 'depraved,' 'corrupt,' '*lewd*,' 'lascivious,' 'impure,' and 'hard-core pornography,' " were all terms that, at one time or another, had been used to define "obscene." 302 Or at 520. (Emphasis supplied.) The court did not, however, suggest or even hint that those terms were themselves vague, indefinite or unclear.

163.670 and ORS 163.673 condemn conduct that is shielded by Article I, section 8, we reject his contention that the statutes are overbroad.[13]

For the same reasons, ORS 163.670 and ORS 163.673 are not unconstitutionally vague or overbroad under the United States Constitution. *See Osborne v. Ohio*, 495 US 103, 110 S Ct 1691, 109 L Ed 2d 98 (1990); *New York v. Ferber*, 458 US 747, 102 S Ct 3348, 73 L Ed 2d 1113 (1982).[14]

With respect to all of the charges, defendant assigns error to the court's denial of his motion to suppress. In denying the motion, the court concluded that neither defendant nor his wife voluntarily consented to the search of the

---

[13] The dissent's extensive analysis under Article I, section 8, although probing and insightful, has no place in the analysis of this case. Essentially, the dissent has rewritten defendant's brief for him. Defendant does not cite any of the cases on which the dissent relies nor does he make any arguments that even remotely resemble those manufactured by the dissent. Contrary to the dissent's assertion, the mere fact that defendant makes the conclusory statement that ORS 163.670 and ORS 163.673 violate Article I, section 8, will not trigger application of the established analytical framework for determining the constitutionality of a statute challenged under that provision.

Defendant does not contend that ORS 163.670 and ORS 163.673 violate Article I, section 8, on their face. He argues only that the trial court erred in holding that the statutes are not unconstitutionally overbroad under Article I, section 8. However, as mentioned in the text, his overbreadth argument is, in actuality, a vagueness argument under Article I, sections 20 and 21. *State v. Graves, supra*, 299 Or at 195; *State v. Robertson, supra*, 293 Or at 407. Consequently, the protections afforded by Article I, section 8, are not implicated and, therefore, are not at issue. Although defendant makes a blanket assertion that ORS 163.670 and ORS 163.673 proscribe conduct that is protected by Article I, section 8, he does not present *any* argument supporting that claim and we will not, and should not, craft one for him. ORAP 5.45(6).

It is worth noting that the charges brought against defendant did not involve conduct that could be classified as expressive or communicative in nature. Under ORS 163.670, the indictment charged him with employing, authorizing, permitting, and inducing a child to engage in sexually explicit conduct for another person to photograph. The indictment under ORS 163.673 accused defendant of developing and duplicating a photograph depicting a child engaged in sexually explicit conduct. Such behavior is not intended to express an idea or opinon and, therefore, does not fall within the protective parameters of Article I, section 8.

[14] In *Osborne*, the United States Supreme Court upheld an Ohio statute that was construed by the Supreme Court of Ohio to prohibit "the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a *lewd exhibition* or involves a graphic focus on the genitals * * *." 495 US at 113. (Emphasis supplied.) The Court noted that "the term 'lewd exhibition of the genitals' " is not unknown in this area and, indeed, "[is] an example of a permissible regulation.' " 495 US at 114 (quoting *New York v. Ferber, supra*, 458 US at 765).

car, but held that the search was justified as a safety measure and by exigent circumstances.

██ ██     Defendant contends, first, that any authority to search the car given by him or his wife was preceded by police illegality in failing to advise them of their rights and in seizing a police scanner without a warrant. Although those facts do not necessitate suppression of the evidence obtained in the ensuing search, they are relevant to a determination of whether the consents were voluntary. *State v. Kennedy*, 290 Or 493, 624 P2d 99 (1981). The state has the burden of proving, by a preponderance of the evidence, that the consents were voluntary. *State v. Stevens*, 311 Or 119, 137, 806 P2d 92 (1991); Or Const, Art I, §§ 9, 12. The burden of proving voluntariness does not become greater because the consents followed illegal police conduct, but remains at a preponderance of the evidence standard. *State v. Johnson*, 120 Or App 151, 155, 851 P2d 1160 (1993). However, it will be more difficult to surmount the preponderance hurdle, "because there is already appreciable evidence that weighs against a finding of voluntariness." *State v. Johnson, supra*, 120 Or App at 155. Here, the trial court did not impose a higher burden on the state. The critical inquiry in this case is whether, under the totality of the circumstances, defendant's and his wife's consents to search were products of their own free will and not the result of coercion, express or implied. *State v. Ledbetter*, 95 Or App 187, 190, 768 P2d 431 (1989).

██     The trial court found:

"The Court is satisfied that, you know, that this was a very coercive situation. There was the nature of the entry that had occurred, the fact that the entry and the individuals there were part of the police — the Sheriff's office tactical team. The — that they had seized the weapons in the spare bedroom without asking for any consent and the factor that the police were still obviously very concerned about their own safety and the location of any other weapons in the area.

"And as deputy Chilcote testified that Ms. Meyer would, appeared to be somewhat coward [*sic*] by the situation and Officer Stephens testified, you know, that she was rattled or unnerved, but seemed to settle down some later.

"I further find that at the time the discussion concerning * * * the search of the Jeep occurred that she was still in handcuffs. Although she had been told that she was not going

to be arrested, there was no indication that she had had any prior experience with law enforcement officers that would allow a person to be in a more objective, or calmer situation when dealing with police officers and have some greater recognition of her — of the rights that she did have and the manner in which they could be enforced.

"And I'm satisfied that she could very reasonably believe that if she did not consent that they were going to search the vehicle anyway. And, therefore, I am satisfied that Ms. Meyer's consent was * * * more the product of that coercive, at most, fear and that it was not freely and voluntarily given and that the State cannot rely upon her consent for the search of that vehicle."

Those findings are supported by the evidence, and we are bound by them. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968). The findings support the trial court's conclusion that the wife's consent to search was not freely and voluntarily given, with which we agree.

■■  The officers did not ask defendant for his consent to search the car. The trial court found that Barr *told* defendant that his wife had given them permission to search for a weapon and that defendant responded by indicating where the weapon would be — under the front seat. The state argues that his failure to object to the search amounted to an implied consent. The trial court, however, found that defendant's response was based on the belief that his wife had already consented to the search and held that, because the state could not rely on her consent, it could not rely on defendant's response when he was told about it. We agree. *State v. Freund*, 102 Or App 647, 796 P2d 656 (1990). It also held that, because the police knew that defendant was an ex-convict, they could not have asked him about a gun in the car without first advising him of his rights, which they did not do until they were driving him to jail. The court was correct.

■  The state contends, nevertheless, that, even without consent, the search was justified as a safety measure. *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). The trial court agreed. The state points out that defendant was in a police car next to defendant's car. However, he was handcuffed and at least one officer was with him. There is *no* evidence that he posed a threat to their safety. It also argues that defendant's wife might have gone for the gun after she was released and

might have tried to free her husband. It is clear, however, that defendant was driven away before his wife was released; three officers remained with her after defendant had been driven away. The state also contends that the officers might have been shot by her after they released her and went to their car. Although courts should not uncharitably second-guess an officer's judgment, *State v. Bates, supra*, 304 Or at 524, we do not believe that there is any evidence in this record to support a finding that defendant's wife posed a threat of serious physical injury to the officers. Although she may have been uncooperative immediately after the officers entered her home, she did cooperate after the situation had calmed down by telling them where they might find guns, including the possibility of finding one in the car. She also allowed them to search her purse for identification.

A similar safety argument was made in *State v. Jones*, 103 Or App 316, 797 P2d 385 (1990). The defendant had been arrested on an outstanding warrant for driving while suspended. A search incident to the arrest produced a sawed-off rifle from defendant's pant leg and a metal Sucrets box from his pocket. In the box were razor blades and bundles of heroin and cocaine. The search of the box was held to be unlawful because, "once it was in [the officer's] possession, he no longer had reason to believe that it posed a threat to him." 103 Or App at 319. Similarly in this case, the metal box could have been withheld from defendant and his wife if it was believed to contain the gun for which the officers were searching. Any threat that the box might have posed and, accordingly, any authority to act for officer safety, dissipated as soon as the box was in the control of the police.

Finally, the state contends, and the trial court held, that the search of the box was justified by probable cause and exigent circumstances. Although Barr had probable cause to believe that a pistol was in the car "somewhere," there is no evidence that he had probable cause to believe that it was in the box. He testified that the box *could* have contained one. The state argues, however, that nothing in the record suggests that the weight of the box was inconsistent with its containing a gun. The burden was on the state to prove that the weight of the box gave the officer probable cause to believe that there was a gun in it. Furthermore, once it was seized,

even if he had probable cause to seize it, there was no need for haste, and safety concerns did not create exigent circumstances sufficient to justify the failure to obtain a search warrant. *See State v. Owens,* 302 Or 196, 729 P2d 524 (1986). Because the police had no authority to open the box without a warrant, the pictures seized should have been suppressed. Also, because the affidavit supporting the warrant to search defendant's house for additional negatives or prints was based on illegally obtained evidence, all evidence derived from that search must be suppressed.[15]

Reversed and remanded for new trials.

**DURHAM, J.,** concurring in part, dissenting in part.

I concur in the majority's disposition of the issue regarding the motion to suppress. However, I disagree with the majority's decision to reverse the trial court's order overruling defendant's demurrer to the two indictments. Because defendant should not be retried under those indictments, I dissent.

The indictments charged defendant with violating ORS 163.673 and ORS 163.670. Defendant contends that those statutes violate Article I, section 8, of the Oregon Constitution because they forbid expression and are unconstitutionally vague and overbroad. The state acknowledges that the dispute centers on the definition of "sexually explicit conduct" in ORS 163.665(2)(f):

" 'Sexually explicit conduct' means actual or simulated:

"(* * * * *

"(f) Lewd exhibition of the genitals or anus."

However, the state contends that ORS 163.670 and ORS 163.673, which incorporate that definition, do not restrict protected expression and are not vague or overbroad. Although ORS 163.665(2) describes various forms of sexually explicit conduct, the parties agree that this case involves only that form described in ORS 163.665(2)(f).

---

[15] Defendant also assigns error to the trial court's denial of his motion for a judgment of acquittal. Given our resolution of defendant's motion to suppress the photographs, we need not decide whether they were "lewd" under the statutes.

The majority decides that the statutes are not vague or overbroad and rejects defendant's Article I, section 8 challenge. Those holdings are erroneous because they are unnecessary.

The majority opinion is notable for its failure to follow over a decade of decisions from the Oregon Supreme Court requiring that we follow a precise analytical framework in assessing the constitutionality of a statute challenged under Article I, section 8. *See Moser v. Frohnmayer*, 315 Or 372, 845 P2d 1284 (1993); *State v. Plowman*, 314 Or 157, 163, 838 P2d 558 (1992); *Oregon State Police Assn. v. State of Oregon*, 308 Or 531, 783 P2d 7 (1989), *cert den* 498 US 810 (1990); *City of Portland v. Tidyman*, 306 Or 174, 759 P2d 242 (1988) ("adult business" ordinance); *State v. Henry*, 302 Or 510, 732 P2d 9 (1987); *State v. Moyle*, 299 Or 691, 695, 705 P2d 740 (1985); *State v. Robertson*, 293 Or 402, 412, 649 P2d 569 (1982); *State v. Spencer*, 289 Or 225, 228, 611 P2d 1147 (1980). That analysis requires us to determine at the outset whether the government enactment on its face restrains speech, within the meaning of Article I, section 8. *State v. Moyle, supra*, 299 Or at 695. If the law restrains the free expression of opinion, we must inquire whether the restraint was well established in law when the American guarantees of free speech were adopted and is one that those guarantees demonstrably were not intended to abolish. *State v. Henry, supra*, 302 Or at 514. If the government demonstrates that the law falls wholly within an historical exception, it will not, on its face, violate Article I, section 8. *State v. Robertson, supra*, 293 Or at 412. However, that enactment will be scrutinized for possible overbreadth, and may be narrowly construed, if possible, to confine it to the constitutional limits intended by the lawmakers. *State v. Moyle, supra*, 299 Or at 702.

A law that does not fall within an historical exception must be analyzed to determine whether the focus of it, as written, is on an identifiable, serious and imminent effect or harm that may be forbidden, rather than on communication itself. *See Oregon State Police Assn. v. State of Oregon, supra*, 308 Or at 536. If the statute identifies in its text the actual harm it forbids, rather than prohibiting the use of words,

then it does not violate Article I, section 8, on its face. *See State v. Ray,* 302 Or 595, 598, 733 P2d 28 (1987).

If a statute is directed only against causing the forbidden effects, a person accused of causing those effects by language or gestures could assert either that the law is unconstitutional as applied to his particular expression or that it is unconstitutionally vague, *i.e.,* that it is drawn in terms that fail to give notice to potential defendants of the conduct that is prohibited and delegates uncontrolled discretion to the judge or jury to punish or withhold punishment. *See State v. Moyle, supra,* 299 Or at 706.

Defendant's contention that the statutes violate Article I, section 8, triggers the application of this established framework for evaluating whether a law violates that provision. *State v. Plowman,* 314 Or 157, 163, 838 P2d 558 (1992). He asserted in his demurrer claims that ORS 163.665(6) is unconstitutionally vague and that

> "[p]roscribing the free depiction of nudity by photographs also violates Defendant's Article I, Section 8 rights under the Oregon Constitution."

On appeal, he again asserts his claims that "the statutes from which the indictments were drawn are unconstitutionally both vague and overbroad and flatly violative of Oregon's Article I, section 8." The majority cannot evade the required methodology by claiming that defendant failed to invoke his rights under Article I, section 8. Even if he had only asserted claims of vagueness and overbreadth, we would be required to decide whether the challenged laws pass muster under the *State v. Robertson* framework. In *State v. Garcias,* 296 Or 688, 695, 679 P2d 1354 (1984), the court said:

> "Before we address defendants' claims of overbreadth and vagueness we must consider first whether this law could be enacted at all in light of [Article I, section 8]."

The majority should apply, not ignore, the required method of analysis.

I turn to the merits. ORS 163.673(1)(a) provides, in part:

> "(1) A person commits the crime of dealing in depictions of sexual conduct involving a child if the person knowingly:

> "(a)  Develops, duplicates, publishes, prints, dissemi-
> nates, exchanges, displays, finances, attempts to finance, or
> sells any photograph, motion picture, videotape or other
> visual recording of sexually explicit conduct involving a child
> * * *."

Under the *State v. Robertson* methodology, ORS 163.673
(1)(a) forbids expression. Photographs or video recordings are
constitutionally protected forms of speech and printing, and
they do not lose their protection because they convey a
sexually explicit content. *See City of Portland v. Tidyman,
supra*, 306 Or at 191 (adult bookstore ordinance held an
unconstitutional infringement of the right of free speech and
printing under Article I, section 8); *State v. Henry, supra*, 302
Or at 525. In view of the restrictions in the text on publica-
tion, printing and dissemination of photographs and video
recordings, it is difficult to imagine a clearer prior restraint on
the creation or free exchange of pictorial communication. The
State made no showing at trial or on appeal, that the statute
satisfied the "historical exception" doctrine. *State v. Henry*
militates against a conclusion that this statute has survived
the adoption of the American constitutional guarantees of
free speech. 302 Or at 520. By following the required meth-
odology, I conclude that Article I, section 8 deprived the
legislature of power to enact ORS 163.673(1)(a).

ORS 163.670 provides, in part:

> "A person commits the crime of using a child in a display
> of sexually explicit conduct if the person employs, authorizes,
> permits, compels or induces a child to participate or engage in
> sexually explicit conduct for any person to observe or to
> record in a photograph, motion picture, videotape or other
> visual recording."

Although the legislature can reasonably regulate the nui-
sance aspect of *adult* sexually explicit photography and video
recordings in the interest of children, it cannot do so by
restricting the speech aspect of those activities. *City of Port-
land v. Tidyman, supra*, 306 Or at 193. (Jones, J., specially
concurring). This statute forbids using children in sexually
explicit conduct but only if the activity is connected to the
creation or observation of a visual recording. It does not
forbid an identifiable effect without restricting communica-
tion itself. *Oregon State Police Assn. v. State of Oregon,*

*supra*, 308 Or at 536. The statute could be drafted to regulate the perceived nuisance aspects of this form of pictorial communication to protect minors, but it does not address that proper objective in its present form.

Even if the challenged statutes could be viewed as restrictions on a forbidden effect that make no reference to expression, they are unconstitutionally vague because they regulate communication only if it is "lewd." *See State v. Graves*, 299 Or 189, 195, 700 P2d 244 (1985), which holds that vague criminal laws offend Article I, sections 20 and 21, of the Oregon Constitution. *See also State v. Spencer*, 289 Or 225, 231, 611 P2d 1147 (1980), which implies that vagueness in a law concerning speech also violates Article I, section 8, and holds that that defect may be raised by demurrer without considering "what the conduct is in the individual case." 289 Or at 228.

In *State v. Henry*, 78 Or App 392, 717 P2d 189 (1986), *aff'd on other grounds*, 302 Or 510, 732 P2d 9 (1987), this court held that a statute that forbade distribution of "obscene" materials was unconstitutionally vague. Our opinion, with which the Supreme Court expressly did not disagree, 302 Or at 513, said:

> "Because ORS 167.087(2) must be used by judges, juries and potential defendants to assess the criminality of particular conduct, we hold that its definitions are not sufficiently precise to determine whether particular sexually explicit material is legally obscene. It is not acceptable, as a matter of state constitutional law, that the precise course of the line dividing obscene expression from protected expression be uncertain and that a person who chooses to disseminate sexually explicit materials must bear the risk of that uncertainty. The constitutional right to communicate freely on 'any subject whatever' guaranteed by Article I, section 8, requires more than the statute provides by way of guidance. A person who trades in sexually explicit materials cannot discern that his wares are legally obscene under the statute; a trial judge is left with no legal standard to apply; and jurors are required to determine what is or is not obscene on the basis of their personal ideas of contemporary state standards." 78 Or App at 405.

In *State v. Ray*, 302 Or 595, 601, 733 P2d 28 (1987), the court analyzed a statute prohibiting harassment by telephonic use of "obscenities." The statute incorporated a legislative definition of "obscene." The court held that the statute was unconstitutionally vague:

"[T]he fatal vagueness in the statute is its reference to ORS 167.087(2)(b) and (c), which provide that a matter is obscene if, taken as a whole, the average person applying contemporary state standards would find the work appeals to the prurient interest in sex and it lacks serious literary, artistic, political or scientific value. Those definitions are an unconstitutional delegation of legislative power to a judge or jury, permitting a judge or jury to decide what the law will be, hinging on a case-by-case adjudication. In a law censoring speech such an indeterminate test is intolerable. *State v. Henry*, 302 Or 510, 513, 732 P2d 9 (1987)."

*State v. Henry* observed that the term "lewd" has functioned as a synonym for the vague term "obscene:"

"The term 'obscene' simply functioned as a condemnatory term declaring words, pictures, ideas or conduct as improper by definition, whatever may, from time to time, be placed within the definition, *e.g.*, 'blasphemous,' 'profane,' 'immoral,' 'depraved,' 'corrupt,' *'lewd*,' 'lascivious,' 'impure' and 'hard-core pornography.'" 302 Or at 520. (Emphasis supplied.)

*State v. Ray* and *State v. Henry* control our analysis of the term "lewd." That indeterminate epithet forbids no specific conduct. It permits a judge and jury to determine what the law will be on a case-by-case basis. That is not acceptable when constitutionally protected freedom of expression hangs in the balance.

The majority relies on two of our cases and a host of dictionary definitions for its conclusion that "lewd" is not unconstitutionally vague. The variety of the dictionary definitions demonstrates that the meaning of "lewd" is subjective and far from unmistakable. We should not attempt to contrive a definition for an amorphous term in a criminal statute that impinges on expression. Policymaking of that kind is the legislature's task.

The short answer to the majority's citation of *Palm Gardens, Inc. v. OLCC*, 15 Or App 20, 514 P2d 888 (1973), *rev*

*den* (1974) and *Korgan v. OLCC*, 72 Or App 31, 695 P2d 81, *rev den* 299 Or 443 (1985), is that those cases pre-date *Henry* and *Ray* and do not reflect the Supreme Court's current analysis of vague terms that forbid expression. Furthermore, assuming arguendo that "lewd" is an acceptable term controlling statutory interpretation by an administrative agency, it does not adequately separate permitted from prohibited expression for criminal law enforcement.[1]

Defendant's demurrer should have been sustained in CA A61964 and CA A61965. Accordingly, I dissent from the majority's ruling on the demurrer.

---

[1] The following passage in *State v. Blair*, 287 Or 519, 524, 601 P2d 766 (1979), is pertinent:

"This is not the place to suggest how to write a valid statute or whether the foregoing elements would suffice, and we intend no such implication. We mention them only to point out that in enacting ORS 166.065(1) the Legislative Assembly expressed a policy of protecting persons against imposition of annoyance and alarm, but it did not face up to the difficult question of exactly how far and against what kind of conduct it intended to extend that protection. A policy so expressed may well be adequate guidance for an administrative agency, but it is not adequate for criminal law enforcement."