Argued and submitted April 3, reversed and remanded to trial court for resentencing
May 29, 1985

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## STEVEN ERNEST GRAVES,
*Petitioner on Review.*

## (10-83-04736; CA A30867; SC S31011)

700 P2d 244

John Daugirda, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the memorandum of law and brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the memorandum of law and brief were Dave Frohnmayer, Attorney General and James E. Mountain, Jr., Solicitor General, Salem.

CARSON, J.

## CARSON, J.

The issues here are whether an ordinary screwdriver is a burglar's tool within the meaning of the first degree burglary statute and whether a part of the definition of burglar's tools incorporated by reference into the first degree burglary statute is impermissibly vague.

Defendant was indicted for burglary in the first degree in violation of ORS 164.225(1)(a) which has the effect of increasing by 15 years the penalty for second degree burglary when a person commits second degree burglary and "in effecting entry or while in a building or in immediate flight therefrom he * * * [i]s armed with a burglar's tool as defined in ORS 164.235. * * *"[1] ORS 164.235(2) defines a burglar's tool as follows:

" *'Burglar tool' means* any acetylene torch, electric arc, burning bar, thermal lance, oxygen lance or other similar device capable of burning through steel, concrete or other solid material, or nitroglycerine, dynamite, gunpowder or any other explosive, tool, instrument or *other article* adapted, designed or *commonly used for committing or facilitating a forcible entry into premises or theft by a physical taking."* (Emphasis supplied.)

The burglar tool with which defendant was alleged to have been armed when he forcibly entered an A & W Restaurant at 3:00 a.m. was an ordinary screwdriver.

Defendant demurred to the indictment on the ground that ORS 164.225(1)(a) is vague in violation of Article I, sections 11, 20 and 21, of the Oregon Constitution[2] and the

---

[1] Burglary in the first degree is a Class A felony, carrying a maximum sentence of 20 years. ORS 161.605(1). Burglary in the second degree is a Class C felony, with a maximum sentence of five years. ORS 161.605(3).

[2] Article I, section 20, of the Oregon Constitution provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Article I, section 21, of the Oregon Constitution provides:

"No *ex post facto* law * * * shall ever be passed, nor shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution; * * *"

Defendant also contended that the statute violates his right to bear arms under Article I, section 27, or the Oregon Constitution. On appeal, defendant abandoned his claim that the statute violates Article I, section 11, of the Oregon Constitution.

Fourteenth Amendment to the United States Constitution.[3] Defendant's demurrer was disallowed, and he subsequently was convicted by a jury of burglary in the first degree. The Court of Appeals affirmed the conviction from the bench.

We allowed review, limited to the questions whether an ordinary screwdriver is a burglar's tool under ORS 164.235(2), and whether the part of ORS 164.225(1)(a) which, by cross-reference, defines first degree burglary as committing second degree burglary while armed with any article "commonly used" for committing or facilitating a forcible entry into premises or theft by a physical taking is impermissibly vague.

This case is a sequel to *State v. Warner,* 298 Or 640, 696 P2d 1052 (1985), and poses the questions we specifically reserved therein:

> "The questions how and to whom the 'common use' must be shown, and whether the terms is sufficiently precise that a defendant can be held liable for knowing what articles are 'commonly used' for forcible entries, *see* ORS 161.095(2), have not been raised, and we express no views thereon." 298 Or at 647 n 7.

## LEGISLATIVE HISTORY OF BURGLAR'S TOOL STATUTES

The crime of *possession* of a burglar's tool first appeared in Oregon as part of the 1971 Criminal Code Revision. Proposed Oregon Criminal Code § 138 (1970). The crime has two elements: possession of a burglar's tool and the intent to use it or knowing that someone intends to use it to commit or facilitate a forcible entry into premises or theft by a physical taking. ORS 164.235(1). Nearly every state prohibits the possession of burglar's tools, but the language of such statutes varies considerably.[4] Oregon, however, is the only state in which the crime of burglary involving a non-dwelling

---

[3] The Fourteenth Amendment to the Constitution of the United States provides:

"* * * nor shall any State deprive any person of life, liberty, or property, without due process of law; * * *"

[4] *See State v. Warner,* 298 Or 640, 643-4, nn 1 and 2, 696 P2d 1052 (1985) (complete list of burglar's tool statutes).

is enhanced from a second to a first degree offense when the actor is "armed with a burglar's tool."[5]

The legislative history of the inclusion of the phrase "armed with a burglar's tool" was detailed in *State v. Warner, supra,* 298 Or at 644-47. We briefly summarize it here. As drafted by the Criminal Law Revision Commission in 1970, the crime of burglary in the second degree was increased to burglary in the first degree when the actor was "armed with explosives or a deadly weapon."[6] The Senate Criminal Law and Procedure Committee amended the proposed first degree burglary statute to include a specific list of burning and exploding devices[7] which were perceived to be needed to reach the safe-cracking professional who uses a burning or exploding device to penetrate a secured area inside the burglarized building.[8] The same list of professional safe-cracking tools was added to the possession of burglar's tools statute which had been originally drafted by the Criminal Law Revision Commission to read:

> "(2) 'Burglar tool' means explosive, tool, instrument or other article adapted, designed or commonly used for committing or facilitating a forcible entry into premises or theft by a physical taking."

After these amendments, the first degree burglary statute included a list of specific burning and exploding devices, while the possession of burglar's tools statute included this list, plus the original catch-all language: "tool, instrument or other article adapted, designed or commonly used for committing or facilitating a forcible entry * * * or theft * * *." For an unexplained reason, the amendment to the first degree burglary statute that emerged from the Senate Criminal Law and Procedure Committee incorporated by cross-reference the entire definition of burglar's tools from the possession of burglar's tools statute, instead of only the itemized list of

---

[5] One other state, Minnesota, recognizes the possession of "a tool to gain access to money or property" as an element of the crime of burglary in the second degree. Minn Stat Ann § 609.582 (West Supp 1985).

[6] Preliminary Draft No. 1, Criminal Law Revision Commission, p 9.

[7] "Acetylene torch, or electric arc, burning bar, thermal lamps, oxygen lamps, or any other similar device capable of burning through steel, concrete, or any other solid substance, or nitroglycerine, dynamite, gunpowder or any other explosive."

[8] Minutes, Senate Law and Criminal Procedure Committee 10 (March 2, 1979).

burning and exploding devices which was drafted by the Senate committee. The intent to use the tool, which is the gravamen of the crime of possession of burglar's tools, was not incorporated into the first degree burglary statute.

## "COMMONLY USED" FOR FORCIBLE
## ENTRY OR THEFT

■ The catch-all phrase in ORS 164.235(2) encompasses articles "adapted, designed or commonly used" for forcible entries or theft by physical taking. No one has argued that ordinary screwdrivers are "designed" for committing or facilitating forcible entries or theft. As we noted in *Warner,* the class of objects designed for those purposes is relatively small. Neither does the state contend that the screwdriver with which the jury found that defendant was armed was "adapted" in any way to facilitate a forcible entry. "Adapted" means that an object actually has been altered or modified in some way for the purpose of facilitating a forcible entry or theft. *State v. Warner, supra,* 298 Or at 651. Neither its actual use nor its capability for use to commit or facilitate a forcible entry or theft is relevant to the issue of adaption. *Id* at 650.

The state contends that an ordinary screwdriver is a "commonly used" burglar's tool, and relies upon the testimony of two police officers at trial who stated that the use of small pry tools to effect unlawful entries into buildings is "very commonplace" and "quite common" and that screwdrivers are "commonly used" and "could be used" to pry open a locked door from the outside, which is what defendant was alleged to have done.

The state asserts that the question whether an article is "commonly used" as a burglar's tool is one of fact which must be established in each case. The state suggests that this could be established by expert testimony from law enforcement officers, retired burglars, or in some instances by judicial notice pursuant to OEC 201. The state relies upon the fact that several other states have held that screwdrivers are a commonly used burglar's tool for the purposes of similarly worded burglar's tool possession statutes. *See, e.g., Burrell v. State,* 429 So2d 636, 639 (Ala Cr App 1982); *State v. Crouch,* 353 SW2d 597, 601 (Mo 1962).

Defendant maintains that the phrase "commonly

used" in ORS 164.235(2) is impermissibly vague because no legal standard defining it exists and, therefore, a jury has no consistent standard to apply to the particular article at issue and inconsistent verdicts based upon possession of the same article are inevitable. Because, as discussed below, we conclude that the phrase "commonly used" in ORS 164.235(2) is impermissibly vague, we do not discuss the evidentiary issues involved in proving what is "commonly used."

## VAGUENESS

 The terms of a criminal statute must be sufficiently explicit to inform those who are subject to it of what conduct on their part will render them liable to its penalties. *State v. Hodges,* 254 Or 21, 27, 457 P2d 491 (1969). In addition to its function of giving fair notice of the forbidden conduct, criminal statute must not be so vague as to permit a judge or jury to exercise uncontrolled discretion in punishing defendants, because this offends the principle against *ex post facto* laws embodied in Article I, section 21, of the Oregon Constitution. *Id.* The equal privileges and immunities clause[9] is also implicated when vague laws give unbridled discretion to judges and jurors to decide what is prohibited in a given case, for this results in the unequal application of criminal laws. *See State v. Robertson,* 293 Or 402, 408, 649 P2d 569 (1982). A criminal statute need not define an offense with such precision that a person in every case can determine in advance that a specific conduct will be within the statute's reach. However, a reasonable degree of certainty is required by Article I, sections 20 and 21.

The vagueness problem which we perceive in the statute is whether it gives fair notice to a defendant of what articles are "commonly used" to commit or facilitate a forcible entry or theft, such that the possession of the article while "effecting entry or while in a building or in immediate flight therefrom" will result in increased punishment, and whether the term gives uncontrolled discretion to the judge or jury to punish defendants arbitrarily and unfairly.

"Commonly used" is not defined in the criminal code. It is not clear whether "commonly used" means an article that

---

[9] Or Const, Art I, § 20, *supra,* n 2.

is frequently used, or one that is generally or usually used to commit a forcible entry or theft. The legislative history and commentary to these two statutes offer no explanation of what is meant by "commonly used." Dictionary definitions are of little help, typically defining a word by the use of synonyms. For instance, one dictionary defines "commonly" as follows: "as a general thing: often in the usual course of events: usually, ordinarily." Webster's Third New International Dictionary 459 (unabridged 1971). "Ordinarily" is defined as: "in the ordinary course of events: usually." *Id* at 1589. "Usually" means "2. more often than not: most often: as a rule." *Id* at 2524.

We looked to other states but found no reported case which specifically analyzed the meaning of the phrase "commonly used" in the context of a burglar's tool statute. We found only two reported cases construing the phrases "commonly used" and "commonly provided," both in statutes significantly different from the one here under review. In *Geis v. State,* 126 Md 265, 268, 94 A 909 (1915), the Maryland Court of Appeals cited Webster's Dictionary to define "commonly used" in a city ordinance as synonymous with "ordinarily, generally, usually, for the most part." In *Frederick Cty Fruit Growers' Ass'n. v. Marshall,* 436 F Supp 218, 225 (WD Va 1977), the United States District Court said that the phrase "commonly provided" in a Department of Labor regulation meant something "generally or ordinarily provided."

These cases, coupled with the dictionary definitions, give some support for the view that "commonly used" means generally or usually used, rather than merely frequently or often used. We do not know how this might be quantified as a matter of evidence at trial. Even if we could ascertain which definition the legislature intended for "commonly used," other vagueness problems exist.

It is unclear to which geographic area "common use" should be applied. Common usage may vary by precinct, county, state or region. Also, unlike the other adjectives in the catch-all phrase here under review, "commonly used" does not refer to a specific article. It requires a potential defendant to know about other burglars' practices.

A related problem arises because the answer to the question whether an article is "commonly used" for forcible

entries or theft may depend upon the level of generality with which the article is described. For example, if an article is described as a prying, cutting or pounding instrument, then it may well be easier to find that the article is one commonly used to facilitate forced entries or theft. On the other hand, if the article is described with greater specificity, then it is numerically less likely to be "commonly used" because each broad category is composed of more than one specific article.[10]

■ Where a criminal statute is attacked as vague for failing fairly to define and communicate its coverage, the statute can sometimes be saved by a judicial interpretation that gives it the requisite definiteness. *See State v. Robertson, supra,* 293 Or at 411. We are convinced that the phrase "commonly used" cannot be saved by judicial interpretation. Even if we were to attempt to define the phrase as a certain mathematical percentage of use in a designated geographic area it would not solve the problem of how potential defendants would receive fair warning of which particular articles are "commonly used" by other burglars for forcible entries or theft.

■ We conclude that the phrase "commonly used" in ORS 164.235(2) does not adequately inform potential defendants, prosecutors, judges or jurors of what conduct will receive enhanced punishment and thereby invites standardless and unequal application of the criminal law. The phrase is impermissibly vague in violation of Article I, sections 20 and 21, of the Oregon Constitution.

The Court of Appeals is reversed and this case is remanded to the trial court. Because the jury necessarily must have found defendant guilty of the crime of burglary in the second degree (a prerequisite for finding guilt on a burglary in the first degree charge), we direct the trial court to enter a judgment of conviction of the necessarily included crime of burglary in the second degree and impose an appropriate sentence therefor.

---

[10] In *State v. Warner, supra,* n 4, the state sought to expand the scope of articles "commonly used" by describing a signpost as a pry bar in response to testimony at trial that a pry bar is a commonly used burglar's tool, where there was no testimony that signposts are commonly used for forcible entry into premises or theft. *See also State v. Pierce,* 69 Or App 620, 687 P2d 161 (1984).