Argued and submitted September 23, reversed December 4, 1996, petition for review dismissed pursuant to ORAP 8.05(2) March 18, 1997 (325 Or 80) Court of Appeals' decision vacated by order May 20, 1997 (325 Or 369)

## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL STEPHEN PERRIN,
*Appellant.*

(9407-44031; CA A90527)

929 P2d 1016

Mary M. Reese, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Ann Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendant appeals from his conviction of felon in possession of a restricted weapon and attacks the constitutionality of ORS 166.270(2). Among other things, the statute prohibits a person who has been convicted of a felony from possessing "an instrument or weapon commonly known as a blackjack." Defendant makes multiple assignments of error, one of which is dispositive. We reverse.

Defendant has previously been convicted of the crimes of robbery in the first degree and robbery in the second degree. On July 14, 1995, the motor vehicle driven by defendant was stopped for having a burned out license plate light. During the traffic stop, one of the officers noticed a leather object hanging from the gearshift in defendant's car and asked him what it was. Defendant replied that it was a "sap." Ultimately, defendant was arrested and charged with being a felon in possession of a "blackjack," a restricted weapon under ORS 166.270(2).

At trial, defendant testified that he is a pest exterminator and that he uses the "sap" in his work to protect himself against rodents and to test for carpenter ant infestations in wooden beams. According to defendant, many exterminators carry similar objects. The arresting officer testified that a "sap" is also known as a "blackjack" and that there is no difference in the meaning of the two words "to her knowledge." After a jury trial, defendant was convicted.

■■  Defendant's first, second and third assignments of error address the issue of whether ORS 166.270(2) is unconstitutionally vague.[1] Specifically, the second assignment of error asserts that the trial court erred when it denied defendant's motion for judgment of acquittal. We address this assignment of error first. ORS 166.270(2) provides, in part:

"Any person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the

---

[1] Challenges other than those affecting speech or expression are examined in the light of the facts of the case at hand. *State v. Butterfield,* 128 Or App 1, 7-8, 874 P2d 1339, *rev den* 319 Or 625 (1994).

United States, who owns or has in the person's possession or under the person's custody or control * * * any instrument or weapon commonly known as a blackjack, slung shot, sandclub, sandbag, sap glove or metal knuckles * * * commits the crime of felon in possession of a restricted weapon."

Our analysis in determining whether a criminal statute is unconstitutionally vague is governed by *State v. Cornell/Pinnell*, 304 Or 27, 741 P2d 501 (1987). *Cornell/Pinnell* holds that "[a] criminal statute violates Article I, sections 20 and 21, of the Oregon Constitution, if it is so vague that it allows a judge or jury unbridled discretion to decide what conduct is prohibited in a given case." *Id.* at 29. *Cornell/Pinnell* requires us to determine whether there is a settled definition for a statutory term so that there exists no danger of unequal application and so that a judge or jury does not have unbridled discretion in determining whether a defendant's conduct is illegal.

In this case, defendant concedes that the meaning of the word "blackjack" has a reasonable degree of certainty. A "blackjack" is a "small striking weapon typically consisting at the striking end of a leather enclosed piece of lead or other heavy metal and at the handle end of a strap or springy shaft that increases the force of impact." *State v. Kessler*, 289 Or 359, 372 n 18, 614 P2d 94 (1980) (quoting from *Webster's Third Int'l Dictionary*). However, defendant contends that the words "commonly known as" in the statute render it vague because its meaning could vary depending on the locale or the community within which the object is possessed. Defendant argues that the object he possessed is known as a sap by pest exterminators, not as a blackjack and, thus, the difference in community terminology illustrates his point.

The state counters that the words "commonly known as" constitute a phrase used throughout Oregon statutes and do not make the statute insufficiently explicit. For instance, ORS 475.992(5) refers to the "plant of the *genis lophophora* commonly known as peyote." ORS 811.215(1) describes vehicles not included in the exemption from seat regulations as "vehicles commonly known as pickup trucks." In restricting where airplanes can legally land, ORS 836.510 uses the

phrase "commonly known as the 'beach.'" The state concludes that, in context, the use of the phrase "commonly known as" refers to the characteristics of a blackjack and that, by reference to a dictionary, it is apparent to anyone that the statute applies to any weapons that have those essential characteristics.

In the context of ORS 166.270(2), we view the language "commonly known as" as being analogous to what the public calls or knows the object as. The intent of the legislature as expressed in the statute is to prohibit felons from carrying certain weapons. It is apparent that the legislature intended that the statute encompass objects that the community perceives as blackjacks. Otherwise, the statute would have referred merely to a "blackjack" or provided a definition such as it has in the definition of "firearms." *See* ORS 166.210(2). The question then is whether the phrase "commonly known as" in the context of the statute puts a potential defendant on notice as to what a judge or juror would find to be within the prohibition.

In that regard, the Supreme Court's opinion in *State v. Graves*, 299 Or 189, 700 P2d 244 (1985), is instructive. At issue in that case was the constitutionality of a statute that defined a burglar's tool as a "tool, instrument or other article adapted, designed or commonly used for committing or facilitating a forcible entry into premises or theft by a physical taking." 299 Or at 191 (quoting *former* ORS 164.235(2); court's emphasis omitted). In determining that the statute was unconstitutionally vague, the court pointed out that the words "commonly used" were not defined in the criminal code and that it was not clear whether the phrase meant an article that was frequently used or had some other meaning. The court also noted that the legislative history and commentary to the statute offered no explanation and that dictionary definitions were of little help. Finally, the court stated:

> "It is unclear to which geographic area 'common use' should be applied. Common usage may vary by precinct, county, state or region. Also, unlike the other adjectives in the catch-all phrase here under review, 'commonly used' does not refer to a specific article. It requires a potential defendant to know about other burglars' practices." *Id*. at 196.

This statute, as applied to defendant, suffers from a similar infirmity. The statute does not make it unlawful to possess a "sap" or a "billy club."[2] *See Kessler*, 289 Or at 372 (holding that the defendant's right to possess a billy club in his home was protected by Article I, section 27, of the Oregon Constitution). Yet, arguably, these weapons could be considered within the reach of the statute if the public perceived them to be "blackjacks." The phrase "commonly known as" is not defined in the criminal code. The legislative history is of little help.[3] A dictionary definition does not assist in further definition. "Commonly" refers to "as a general thing: often in the usual course of events: USUALLY, ORDINARILY." *Webster's Third New Int'l Dictionary* 459 (unabridged ed 1976). We have been unable to find any reported cases that construe the phrase "commonly known as" in the light of a constitutional challenge for vagueness. Not unlike the situation in *Graves*, "common knowledge" could vary from region to region. It could be that defendant's "sap" is called a "blackjack" in some regions of the state but not in others. In effect, the statute requires a potential defendant to anticipate what is common knowledge in each community in which the weapon is possessed. That prospect results in *ad hoc* decisions by courts and juries.

---

[2] "Sap is a general term which, as applied to weapons, includes a blackjack, slingshot, billy, sandbag, or brass knuckles." *Horn v. City of Elgin*, 28 Or App 545, 547 n 1, 559 P2d 1319, *rev den* 278 Or 157 (1977) (quoting *Black's Law Dictionary* 1508 (4th ed 1968)). Because a "sap" has a broader meaning, presumably some "saps" would not meet the definition of a "blackjack."

[3] In 1985, the American Civil Liberties Union proposed a bill to the legislature that was, in essence, a "housekeeping" bill. *See* Minutes, House Committee on Judiciary, Subcommittee 1, April 8, 1985, p 9. Specifically, part of the statute repealed ORS 166.510, which the Supreme Court had held unconstitutional under Article I, section 27, of the Oregon Constitution (the right to bear arms). *See Kessler*, 289 Or at 372; *see also State v. Delgado*, 298 Or 395, 692 P2d 610 (1984) (holding that the statute prohibiting possession of a switchblade violates the right to bear arms). *Former* ORS 166.510 made it a misdemeanor for any person to possess "an instrument or weapon commonly known as a blackjack, slung shot, billy, sandclub, sandbag, sap glove or metal knuckles." This language originated from a 1917 statute that provided that "[a]ny person who carries or possesses an instrument or weapon commonly known as a blackjack, slungshot, billy, sandbag, metal knuckles * * * is guilty of a misdemeanor." Or Laws 1917, ch 377, § 2. When the legislature repealed ORS 166.510, it amended ORS 166.270, which restricts felons from possessing certain weapons. The revision to ORS 166.270 added, in part, the phrase "or any instrument or weapon commonly known as a blackjack, slung shot, sandclub, sandbag, sap glove or metal knuckles" to the statute. *See* Or Laws 1985, ch 709, § 2.

■      When a criminal statute is attacked on the ground of vagueness, the statute can sometimes be saved by a judicial interpretation that gives it sufficient definiteness. It is the court's obligation to do this when it can be done without departing too far from what the legislature intended or from what the statute itself conveys to its readers. *State v. Robertson*, 293 Or 402, 411, 649 P2d 569 (1982). For instance, a possible interpretation of the statute could be that what is known as a "blackjack" is any instrument or weapon that has a weighted end and a flexible handle. However, that is not what the statute states, nor does that appear to be what the legislature intended. It is apparent that the legislature intended to add an element to the statute that connotes community perception and encompasses weapons other than those that meet the strict definition of a "blackjack." Even if we were to attempt to define the phrase further, it would not solve the problem of how potential defendants would receive fair warning of what particular articles are "commonly known as" blackjacks in the particular community in which the object was possessed. We conclude that the phrase "commonly known as a blackjack" in ORS 166.270(2) does not adequately inform potential defendants, prosecutors, judges or jurors of what conduct will be deemed criminal and thereby invites standardless and unequal application of the criminal law. The phrase is impermissibly vague in violation of Article I, sections 20 and 21, of the Oregon Constitution insofar as it refers to a "blackjack."

Reversed.