Argued and submitted November 18, 1998, affirmed April 12, 2000

## STATE OF OREGON,
*Respondent,*

*v.*

## RUSSELL ORLANDO COURTIER,
*Appellant.*

(961047825; CA A101011)

997 P2d 894

Garrett A. Richardson argued the cause and filed the brief for appellant.

Ann Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

## LINDER, J.

Defendant appeals his jury conviction for violating Portland City Code (PCC) § 14.32.100, which prohibits carrying "any dangerous or deadly weapon in a concealed manner." The information charging defendant alleged that he "unlawfully and knowingly carr[ied] concealed upon [his] person a dangerous or deadly weapon, to-wit: a nunchaku * * *." At trial, defendant moved for a judgment of acquittal, arguing that an element of the offense is that the item defendant possessed be "commonly known" as a nunchaku. Defendant contended that the prosecution had failed to present evidence on that point and that he therefore should be acquitted. The trial court denied the motion. After the jury returned a verdict of guilt, defendant filed a motion in arrest of judgment, challenging the ordinance as unconstitutionally vague. The trial court denied that motion as well. On appeal, defendant assigns error to both rulings. We affirm.

The relevant facts are few and undisputed. Officers searched defendant upon taking him into custody. In the course of the search, they found what they termed "numchucks" hidden in defendant's pants. The officers described the concealed item as a martial arts weapon consisting of two wooden sticks, with swivels on each end and connected with a chain, and that the officers knew from experience is used to injure people.

Based on his possession and concealment of the item, defendant was charged with violating PCC § 14.32.100, which provides:

"(a) It is unlawful for any person, not authorized by law, to carry any dangerous or deadly weapon in a concealed manner.

"(b) As used in this Chapter, 'dangerous or deadly weapon' includes a firearm, metal knuckles, straight razor, weapon of the type commonly known as nunchaku, black jack, sap, or sap glove, and any type of knife other than an ordinary pocketknife with a blade not longer than three and 3-1/2 inches.[1] When carried with intent to use the same

---

[1] In *City of Portland v. Lodi*, 308 Or 468, 782 P2d 415 (1989), the Supreme Court invalidated the portion of the ordinance directed to carrying a concealed

unlawfully against another, 'dangerous or deadly weapon' also includes any instrument or device capable of inflicting injury to the person or property of another."

Defendant relied on subsection (b), arguing that the ordinance requires the prosecution to establish that the weapon that defendant concealed was "commonly known" as a nunchaku.[2] The trial court concluded that the "commonly known" language in the ordinance does not define an element of the offense but instead is a "way of describing what it is that is unlawful to conceal and possess." We agree.

The structure of the ordinance presents the first problem for defendant's argument. The prohibited conduct is set forth in subsection (a). By its terms, it extends to *"any* dangerous or deadly weapon." PCC § 14.32.100(a) (emphasis added). Subsection (b) is merely descriptive in nature. The first sentence of subsection (b) identifies particular items that fall within the prohibition. The second sentence describes instruments and devices capable of inflicting injury to person or property when carried with the intent to use them unlawfully. Significantly, it does not declare what "dangerous or deadly weapon" *means* but only what that terminology *includes. See State v. Haynes,* 149 Or App 73, 76-77, 942 P2d 295 (1997), *rev den* 328 Or 275 (1999) (describing differences between what term "includes" and what it "means"). Thus, "dangerous or deadly weapon" is defined to include— but is not limited to—particularly described and identified articles, as well as articles that have certain capabilities and are carried with a particular state of mind.

In that respect, this ordinance is significantly different from the statute at issue in *State v. Vasquez-Rubio,* 323 Or 275, 917 P2d 494 (1996). The issue there was whether the state was obligated to prove, as an element of the offense of

knife, holding that it is preempted by state statute. No preemption issue is raised in this case.

[2] The officers used the term "numchuks" rather than "nunchaku," but defendant has not raised any issue in that regard. The terms appear synonymous and the officers' reference to "numchuks" was treated as insignificant at trial. Defendant therefore has never claimed that the record is inadequate to establish that he possessed and concealed an item that *was* a nunchaku. His argument, both below and on appeal, is limited to a claim that the prosecution failed to present evidence that the item is "commonly known" as such.

unlawful possession of a machine gun, that the machine gun was not registered under federal law. The reference to a machine gun's registration status was included in the statute's prohibitory language. That is, ORS 166.272 at the time prohibited "knowingly possess[ing] any machine gun * * * not registered as required under federal law."[3] The court held that, because the reference to registration status immediately followed another element of the crime (*i.e.*, that the person "knowingly possess[ ] any machine gun"), registration status was a continuation of the description of the offense, and thus an element of the crime itself. *Id.* at 280. Here, in contrast, Portland's ordinance prohibits the concealment of *any* dangerous or deadly weapon. The items described and listed in subsection (b) are not part of the description of the offense, nor are dangerous or deadly weapons limited to the subsection (b) definition.

The precise words used in subsection (b) further defeat the suggestion that the offense requires proof that defendant concealed an item that not only *is* a nunchaku, but that is *commonly known as such. See generally id.* (court looks to exact wording of statute to determine what was intended to be included as elements of an offense). Subsection (b) specifically lists firearms, metal knuckles, and straight razors as within the definition of "dangerous or deadly weapon." It then adds "weapon of the type commonly known as nunchaku, black jack, sap, or sap glove." The important words are "of the type." Those words convey that the definition extends to weapons of a certain *nature* or that have certain *essential characteristics*—that is, the nature or characteristics of nunchakus, black jacks, saps, or sap gloves. Said another way, what matters under the ordinance is that the concealed item be of a particular character or type, not that it be referred to or perceived as a particular item or thing. Thus, as the trial court aptly observed, this particular reference is a "way of describing what it is that is unlawful to conceal and possess," not a requirement that the prosecution establish what the item is commonly called.

---

[3] The legislature amended the statute in 1997 to delete any reference to registration from the prohibitory language, and, instead, to make the fact of federal registration an affirmative defense, thus shifting the burden of proof to the defendant. Or Laws 1997, ch 749, § 8 and ch 798, § 1.

Based both on the ordinance's structure and the exact wording of subsection (b), we reject defendant's argument that he was entitled to a judgment of acquittal because the prosecution failed to prove that the item defendant possessed was "commonly known" as a nunchaku. Defendant was charged with concealing a "dangerous or deadly weapon."[4] For purposes of his motion, the only question was whether a rational factfinder could conclude beyond a reasonable doubt that the item that defendant concealed was a "dangerous or deadly weapon." *See State v. Pierce*, 153 Or App 569, 575, 962 P2d 35, *rev den* 327 Or 448 (1998) (standard of review on denial of judgment of acquittal). Defendant does not dispute that the evidence was sufficient to establish that defendant concealed a nunchaku or that a nunchaku qualifies as a dangerous or deadly weapon. Nor could he. The officers described the nunchaku sticks ("numchucks") and identified them as a martial arts "weapon" used to injure other persons. That testimony is ample to permit a factfinder to conclude that defendant possessed and concealed a weapon designed to inflict serious physical injury and, thus, that he carried concealed a dangerous or deadly weapon. *See* ORS 161.015(1) (defining dangerous weapon); ORS 161.015(2) (defining deadly weapon); PCC § 1.01.170 (requiring Portland's code to be construed consistent with state criminal laws); *State v. Tucker*, 28 Or App 29, 33, 558 P2d 1244, *rev den* 277 Or 491 (1977) (nunchaku sticks are primarily designed and intended for use in combat, and their character as dangerous or deadly weapons is legislatively recognized). The trial court correctly denied the motion for judgment of acquittal.[5]

---

[1] As noted at the outset of our opinion, the information charging defendant also contained a "to-wit" clause identifying the particular weapon as a nunchaku. That portion of the charge, however, was surplusage. *See Frisbie v. State*, 1 Or 248 (1859) (state is not held to strict proof of allegations following a "to-wit" clause unless necessary to describe the offense); *State v. Harris*, 159 Or App 553, 980 P2d 1132 (1999) (allegations following "to-wit" clauses were not prejudicial surplusage).

[5] In his argument on the first assignment of error, defendant refers several times to the trial court's instructions to the jury, suggesting that the evidence was insufficient under them. Suffice it to say that a motion for judgment of acquittal tests only the sufficiency of the evidence to support the verdict, not the sufficiency of the evidence to satisfy the instructions. Defendant has not assigned error to the instructions, and their correctness is not an issue on appeal.

■     Defendant's second argument is related to his first. He challenges the trial court's denial of his motion in arrest of judgment, in which he argued that PCC § 14.32.100 is unconstitutionally vague. He contends on appeal, as he did below, that because the offense describes certain weapons as within its scope by reference to how they are "commonly known," the ordinance fails to provide adequate advance notice of what conduct is unlawful and fails adequately to guide judges and juries in deciding whether a defendant's conduct falls within the prohibition in a given case. *See generally State v. Cornell / Pinnell*, 304 Or 27, 29, 741 P2d 501 (1987); *State v. Graves*, 299 Or 189, 195, 700 P2d 244 (1985).[6]

Defendant relies largely on *Graves*, in which the court held that a portion of the definition of "burglar tool" was impermissibly vague. The defendant in that case was indicted for first-degree burglary based on an allegation that he possessed a burglar's tool in the commission of the offense. That allegation, if proved, elevated the crime to first-degree burglary and increased the penalty by 15 years. The particular item that the defendant possessed was an ordinary screwdriver. The statute defined "burglar tool" by specifically listing some devices and by a catch-all phrase that expanded the definition to apply to any "other article adapted, designed, *or commonly used* for committing or facilitating a forcible entry into premises." *Graves*, 299 Or at 191 (emphasis added). A "screwdriver" was not among the items specifically enumerated in the statute. Nor did it fall under the catch-all that applied to objects "adapted" or "designed" for burglary. *Id.* at 194. Under the definition, the only way that an ordinary screwdriver could qualify as a burglar's tool was if it was an article "commonly used" by other burglars. *Id.*

The vagueness problems that the court identified were the statute's failure to give "fair notice to a defendant of what articles are 'commonly used' to commit or facilitate a forcible entry or theft" and, also, the statute's failure to give sufficient guidance to judges and juries in determining the

[6] As the court in *Cornell / Pinnell* and *Graves* described, vagueness problems implicate the equal privileges guarantee and the *ex post facto* prohibition contained in, respectively, Article I, sections 20 and 21, of the Oregon Constitution. *Cornell / Pinnell*, 304 Or at 29; *Graves*, 299 Or at 195.

punishment to be imposed. *Id.* at 195. The phrase "commonly used" was not defined by statute, nor did it have a generally accepted legal meaning in that particular context. *Id.* at 195-96. The court was able to discern that the language potentially was intended to refer to how a tool generally or usually was used. The court concluded, however, that even so construed, the court still could not determine what kind of evidence could establish common usage at trial, and whether common usage was something that varied by geographic area. Finally, "unlike the other adjectives in the catch-all phrase here under review, 'commonly used' does not refer to a specific article. It requires a potential defendant to know about other burglars' practices." *Id.* at 196. The Supreme Court therefore held unconstitutional the portion of the burglar tool definition referring to instruments and tools "commonly used" in the commission of burglaries. *Id.* at 197.

Although the language at issue in *Graves* ("commonly used") is similar to the language defendant challenges in this case ("commonly known"), the similarities end there. Under the burglary statutes in *Graves*, a tool or instrument that was otherwise altogether lawful to possess (even while committing burglary) took on an entirely different legal significance *because and only because* of its common usage by other burglars. That is, depending on the practices of other people, rather than the inherent nature of the article, an item that ordinarily would be lawful to possess changed the classification of the defendant's crime and the punishment for it. Implicit in the court's analysis was its recognition that a tool's common usage was something that the state was obligated to prove under the statute. The statute therefore posed vagueness problems in terms of a potential defendant's inability to anticipate the burglarious practices of others and thereby conform his or her conduct to what the law requires. Because of the uncertainties of proof involved, the statute also invited standardless and unequal application of the law by judges and juries. *Id.*

But the same is not true under this ordinance, as we have already discussed. The ordinance prohibits the concealment of *any* dangerous or deadly weapon. From that alone, potential defendants have fair warning of the conduct in which they may not engage. The phrase "dangerous or deadly

weapon" has a settled meaning under the Oregon Criminal Code. *See* ORS 161.015(1) (defining "dangerous weapon" as, *inter alia*, any weapon readily capable of causing death or serious physical injury in the circumstances in which it is used, attempted to be used, or threatened to be used); ORS 161.015(2) (defining "deadly weapon" to mean any instrument, article, or substance specifically designed for and presently capable of causing death or serious physical injury). The City of Portland specifically provides for its code to be construed consistently with state criminal law. PCC § 1.01.170. Thus, unless some provision of the code requires otherwise, the ordinance's reference to "dangerous or deadly weapon" should take its meaning from the statutes that it complements. The settled meaning of dangerous or deadly weapon as applied to nunchakus is not vague, as we have previously held. *Tucker*, 28 Or App at 33-34.

Somewhat ironically, then, if the ordinance consisted only of subsection (a), defendant would be unable to make the argument he makes here. The only question would be whether the item that he concealed qualified as a "dangerous or deadly weapon," and, as we have already discussed, it plainly does. Defendant is able to advance a vagueness argument only because subsection (b) further describes what is *included* in the prohibition and specifies "weapon of the type commonly known as," among others, a nunchaku. The trial court, in rejecting defendant's argument below, identified what we agree is the critical difference between this ordinance and the statute in *Graves*:

> "*Graves* is dealing with a situation in which an otherwise innocent device used for lots of lawful purposes is swept within the net of criminal law because of some notion, some reference to common use.
>
> "* * * My best shot is that the distinction that I mentioned before is, in fact, critical. That this is a weapon commonly known as a numchuks. It is not something which becomes a weapon only by virtue of its being commonly known as something."

The trial court, in our view, hit the nail directly on its head. Under the ordinance, nunchakus are unlawful to conceal because they *are* dangerous or deadly weapons. Likewise, weapons *of the type* commonly known as nunchakus are

unlawful to conceal because they *are* weapons with essential characteristics that make them dangerous or deadly. How those weapons are known or perceived is unimportant under the ordinance. The problem identified in *Graves* simply is not present here. This is not a circumstance in which a broad range of ordinary and often innocently possessed articles acquire an unlawful character because—and *only* because—of how other people refer to those articles, rather than the inherent characteristics of the articles themselves. Thus, none of the quandaries posed in *Graves* is posed here, such as how the prosecution would establish the common name for an object, in what community the name must be commonplace, and what mathematical degree of commonness renders it so.[7]

In sum, we hold that the prosecution was not required to prove that the item that defendant concealed was commonly known as a nunchaku, but only that it was a dangerous or deadly weapon. Consequently, the trial court properly denied defendant's motion for judgment of acquittal. We further hold that the ordinance's reference to a weapon "of the type commonly known as" a nunchaku is not unconstitutionally vague. The trial court therefore properly denied defendant's motion in arrest of judgment.

Affirmed.

---

[7] This ordinance differs significantly from ORS 166.270(2) (1995), which prohibited felons from possessing, among other specified weapons, a weapon "commonly known" as, for example, a blackjack. ORS 166.270(2) (1995) was not directed to possession of *any* dangerous or deadly weapon but, rather, only to a narrow class of identified ones. As in *Vasquez-Rubio*, the items were part of the description of the offense. Moreover, the statute prohibited a felon's possession of, among other objects, "any instrument or weapon commonly known as a blackjack," not, as here, items "*of the type* commonly known as" the designated weapons. Thus, this ordinance significantly differs in its structure and in its exact wording from the 1995 version of ORS 166.270(2). Consequently, we have no occasion to avow or disavow our vagueness analysis in *State v. Perrin*, 145 Or App 80, 929 P2d 1016 (1996), *vacated* 325 Or 369, 939 P2d 45 (1997).