Argued and submitted June 29, affirmed December 26, 2001

STATE OF OREGON,
*Respondent,*

*v.*

JOHNNY LEE EVANS,
*Appellant.*

CF990521; A108676

37 P3d 227

Meredith Allen, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

Armstrong, J., dissenting.

**EDMONDS, P. J.**

Defendant appeals from a judgment of conviction for one count of knowingly using a child in a display of sexually explicit conduct. ORS 163.670. He does not appeal his conviction on another count of that crime. On appeal, he argues that the trial court erred when it denied his motion for judgment of acquittal as a matter of law. We affirm.

Viewing the evidence in the light most favorable to the state, the jury could have found the following. Defendant lived in a mobile home with his fiancé and their two sons, age three years and six months, respectively. At times, the fiancé's daughter, M., who was 8 years old at the time of trial, stayed in the residence with defendant's family while having visitation with her mother. While all the members of the household, including M., were present one night in the residence, defendant encouraged everyone to "get naked." Everyone immediately complied, except M., who said that she did not want to participate. However, defendant told her that she would not be "part of this family" if she did not comply with his request. M. then went to another room, took off her clothes, wrapped herself in a blanket and rejoined the family in the living room. The three-year-old playfully took the blanket from M. and put it beyond her reach. The family then watched a movie together.

At some point, M.'s mother went to another room to take a bath, and M. followed her, asking her to teach M. how to dance. However, defendant called M. back into the family room and told her that he would teach her how to dance. He then assumed a standard slow-dancing position with M. and told her to "watch his feet." He then danced with M., holding her so closely that his genitals were pressed into her stomach. Both defendant and M. were nude at the time. According to M., defendant did not have an erection.

After the dancing ended, the family went to bed. The next day, M.'s mother ran some errands and left her in defendant's care. Defendant entered the bedroom where M. was and, according to M.:

"[Defendant] was fixing a bottle because my brother had to take a nap. And then when [the three-year-old] went outside, [defendant] said, Get on the bed and pull down your shorts and pull down your panties and lay on the bed and show me your privates.

"I said, How come you want to see my privates? Last night, I was naked. He said, I didn't see it.

"So, [the three-year-old] was outside and then I got on the bed and pulled down my pants and he told me to spread out my legs and lay on the bed and show him my privates."

She complied with defendant's request, while he watched from the doorway. A few minutes later, she got dressed again. M. did not tell her mother about the second incident. After her visitation with her mother ended, M. returned to her father's residence and disclosed the events described above. M.'s father immediately took her to the police, and the investigation that followed resulted in this prosecution and the convictions.

The first count against defendant is based on the naked dancing episode. The second count charges the same crime and is based on defendant's request that M. display her genitals to him. Defendant was acquitted of a third count charging sex abuse, ORS 163.427, which was also based on the second incident.

Defendant argued to the trial court that he was entitled to a judgment of acquittal on Count 1, because:

"Looking at that charge, the State has to prove that there was sexually explicit conduct and we feel that doesn't apply here. That phrase is defined under ORS 163.665(3). And it says that sexually explicit conduct, and it lists (a) through (f) by ways which that can be done.

"* * * * *

"The only theory that the State could proceed forward on this charge would be under subparagraph (f), which is sexually explicit was a lewd exhibition of sexual or intimate parts.

"* * * * *

"And I don't believe that, under these facts, we have a lewd exhibition. What we have is nudity inside of a trailer but there's not exhibition of—genitalia or anything that would make this lewd. * * * That's what makes it a crime. It has to be a lewd exhibition. *And the facts here were only that people were walking around naked inside of a mobile home. That's not sufficient.* And also, the contact, or the display of defendant's genitals to the child, that was not in an erect state. The evidence was that it was soft and squishy. It was not—it was not exhibiting a lustful manifestation. It was mere nudity, and mere nudity is not enough. So, we'd ask for a judgment of acquittal on Count 1." (Emphasis added.)

The trial court ruled as follows:

"I've reviewed the case cited by counsel [*State v. Meyer*, 120 Or App 319, 852 P2d 879 (1993)], and it does, in fact, define what lewd conduct is, under this particular statute. And it states, 'we interpret the phrase "lewd exhibition" of the genitals or anus...' which is the (f) that counsel mentioned, 'to mean exhibition with the intent of stimulating the lust or sexual desires of the person who views it.'

"In this particular case, just having the parties take their clothes off is not sufficient for the court to determine or, at least, to go to the jury to determine whether or not it was with the intent of stimulating the lust or sexual desires of the person who views it.

"However, I believe, taking all of the facts before the jury, as a whole, not only the matters on the 5th, but also on the 6th, as I've previously ruled is sufficient, at least, to go to the jury to determine whether or not this exhibition was with that intent. And, therefore, I'm going to deny your motion, counsel."

On appeal, defendant assigns as error the denial of his motion and argues:

"In *State v. Meyer*, 120 Or App 319, 852 P2d 879 (1993), this court considered whether ORS 163.670 was unconstitutionally vague. In doing so, the court interpreted the text of ORS 163.670 and ORS 163.665(3)(f). Specifically, the court interpreted the phrase 'lewd exhibition' in the definition of sexually explicit conduct. * * * The court concluded that the phrase 'lewd exhibition' means 'exhibition with the intent of stimulating the lust or sexual desires of the person who views it.'

"Here, the conduct involved nudity of the entire family while eating dinner and watching an innocent movie together. There is nothing inherently sexual in this conduct. The dancing does not change the nature of the conduct. There was nothing graphic about the short dancing lesson, and defendant displayed no sign of sexual arousal or gratification. * * * No reasonable factfinder could conclude that this behavior was sexually explicit conduct."

The issue is whether a rational factfinder could conclude on this record that defendant induced M. to engage in "sexually explicit conduct" as required by ORS 163.670 and as defined by ORS 163.665(3)(f). *See State v. King,* 307 Or 332, 339, 768 P2d 391 (1989) (the proper inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt). ORS 163.670 provides, in part:

"(1)   A person commits the crime of using a child in a display of sexually explicit conduct if the person employs, authorizes, permits, compels or induces a child to participate or engage in sexually explicit conduct for any person to observe or to record in a photograph, motion picture, videotape or other visual recording."[1]

ORS 163.665(3) provides definitions for "[s]exually explicit conduct," including subsection (f) which provides that sexually explicit conduct is the "[l]ewd exhibition of sexual or other intimate parts."

We conclude that a rational factfinder could find from the above facts that defendant knowingly caused M. to engage in a display of sexually explicit conduct as defined by ORS 163.665(3)(f).[2] Defendant initiated and induced M.'s removal of her clothing by telling her that she was not part of

---

[1] Defendant did not argue to the trial court, nor does he on appeal, about the statute's requirement that the child's participation in the sexually explicit conduct must be "for any person to observe," and we need not decide what the scope of that phrase is within the meaning of the statute. In addition, we note that the statute does not require that the observer of sexually explicit conduct become sexually aroused. Rather, it focuses on the display of a child victim for that purpose.

[2] ORS 161.085(8) defines "knowingly," when used with respect to conduct or to a circumstance described by a statute defining an offense, as requiring "that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists."

the family unless she joined them in the nude. He then called her back into his presence when she attempted to leave and volunteered to teach her how to dance. He then danced with her while both were nude and pressed his genitals against her. In addition, his conduct and the statements on the following day constitute additional evidence on which a rational factfinder could rely to draw an inference as to defendant's scienter.

The dissent says, in part:

"The statute that proscribes the use of children in a sexually explicit display is focused on the objective nature of the children's conduct, *not on the subjective intent of the person* who induces the children to engage in the conduct. Consequently, *it does not matter whether defendant sought sexual stimulation or gratification* from M.'s nudity.[3] What matters, instead, is whether the manner in which defendant's and M.'s genitals were exhibited would be perceived as lewd from the perspective of the average person observing the exhibition. The exhibition of defendant's and M.'s genitals does not meet the latter standard[.]" 178 Or App at 447 (Armstrong, J., dissenting) (emphasis added).

The dissent further reasons:

"Assume that a person is sexually stimulated by watching nude prepubescent children play volleyball. The person goes to a nudist camp or retreat and induces a group of nude children to play volleyball for the person to watch and photograph. In the majority's view of the statute, the person who engaged in that conduct could be found guilty of using children in a display of sexually explicit conduct because, in light of the sexual purpose served by the exhibition, the

---

[3] The assertion that the statute's focus is not on the intent of the person charged under the statute is contrary to our holding in *Meyer*, 120 Or App at 326, in which we said: "We interpret the phrase 'lewd exhibition of the genitals or anus' in ORS 163.670 and ORS 163.673 to mean exhibition *with the intent* of stimulating the lust or sexual desires of the person who views it." (Emphasis added.) In *Meyer*, after performing a rigorous interpretation of those statutes, we concluded that the *statute required an intent to arouse the viewer,* and we upheld the giving of jury instructions that stated: " 'Lewd—the term lewd or lewd exhibition as used in the law * * * means an exhibition of the [genitals or] anus which is *meant to arouse the sexual gratification of the person observing the exhibition*[.]' " *Meyer*, 120 Or App at 326 n 11 (emphasis in original).

exhibition constituted a lewd exhibition of the children's genitals." 178 Or App at 448-49 (Armstrong, J., dissenting).

The dissent's argument proves too much.[4] Defendant was charged with participating in "sexually explicit conduct for a person to observe." ORS 163.665(3) defines "sexually explicit conduct" to include actual or simulated sexual intercourse, deviant sexual intercourse, genital-genital, oral-genital, anal-genital or oral-anal contact, penetration of the vagina or rectum, masturbation, sadistic or masochistic abuse and lewd exhibition of sexual or other intimate parts. Defendant argued to the trial court that there was no lewd exhibition of M.'s genitals because "the facts here were only that people were walking around naked inside of a mobile home" and that, because defendant did not become sexually aroused, defendant and M.'s conduct "was not exhibiting a lustful manifestation." Apparently, the dissent would accept defendant's characterization of the facts. Although the jury could have reached the "household nudity" interpretation of the evidence advanced by defendant and accepted by the dissent, it was not required to do so. The question is whether, viewing the evidence in the light most favorable to the state, defendant engaged M. in a lewd exhibition of sexual or other intimate parts.

Notwithstanding the dissent's effort to compare those facts to a children's volleyball game at a nudist camp and to attribute to us incorrectly a focus solely on the sexual

---

[4] In part, the dissent reasons from legislative history and relies on a proposed change that was in the original draft bill but was omitted from the final, legislatively approved, version of the bill. We make two observations in response to that methodology. First, the statute is clear on its face as to its intended meaning, and the statutory definitions of lewd exhibition make even clearer the intent requirement of the crime.

Second, the dissent reasons, from the legislature's rejection of certain proposed language, that it intended the bill not to have the interpretation that we made in *Meyer*. However, the legislature's inclusion of certain language, and rejection of other language, can be attributed to more than one motivation. It is equally plausible that the legislature had a different reason in mind from what the dissent posits. As we said in *Eslamizar v. American States Ins. Co.*, 134 Or App 138, 145 n 3, 894 P2d 1195, *rev den* 322 Or 228 (1995):

"Whatever the legislative history reveals, we are constrained to give effect to the language that the legislature actually enacted[.] * * * If it is not what the legislature intended, then the legislature has made a mistake, and only the legislature may remedy it."

purpose underlying the exhibition, a jury could find that defendant's acts of dancing with M. and the pressing of his genitals against her body while she was unclothed and her genitals were exposed satisfies the statutory definition for "sexually explicit conduct." It follows that the trial court did not err in denying defendant's motion for a judgment of acquittal.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority concludes that defendant's conduct in getting M. to be nude with other family members and to dance with defendant while nude could support a conviction for using M. in a display of sexually explicit conduct. The majority is wrong. The statute that proscribes the use of children in a sexually explicit display is focused on the objective nature of the children's conduct, not on the subjective intent of the person who induces the children to engage in the conduct. Consequently, it does not matter whether defendant sought sexual stimulation or gratification from M.'s nudity. What matters, instead, is whether the manner in which defendant's and M.'s genitals were exhibited would be perceived as lewd from the perspective of the average person viewing the exhibition. The exhibition of defendant's and M.'s genitals does not meet the latter standard, so the majority errs in affirming the trial court's denial of defendant's motion for a judgment of acquittal on the charge that he used M. in a display of sexually explicit conduct.

ORS 163.665(3) defines "sexually explicit conduct" for purposes of a number of crimes involving the use of children in such conduct, including the crime for which defendant was convicted: using a child in a display of sexually explicit conduct. *See* ORS 163.665 to ORS 163.695. It provides that sexually explicit conduct

"means actual or simulated:

"(a)   Sexual intercourse or deviant sexual intercourse;

"(b)   Genital-genital, oral-genital, anal-genital or oral-anal contact, whether between persons of the same or opposite sex or between humans and animals;

"(c)   Penetration of the vagina or rectum by any object other than as part of a medical diagnosis or treatment or as part of a personal hygiene practice;

"(d)   Masturbation;

"(e)   Sadistic or masochistic abuse; or

"(f)   Lewd exhibition of sexual or other intimate parts."

ORS 163.665(3). That definition describes physical acts. The statutes that rely on that definition prohibit people (1) from having children participate or engage in those acts for people to observe or visually record, (2) from paying or giving anything of value to observe children engaged in those acts, and (3) from handling in various ways visual records of children engaged in those acts. *See* ORS 163.665 to ORS 163.689.

The description of the physical acts in ORS 163.665(3) focuses on the nature of the acts themselves, not on the mental state of the people who, for example, encourage children to participate in those acts. The majority misunderstands that point. It believes that whether an exhibition of genitals is lewd under ORS 163.665(3)(f) can turn on whether the person who induces the exhibition intends for it to produce sexual thoughts or stimulation among the people who view it. The statute does not work that way.[1]

That it does not can readily be demonstrated. Assume that a person is sexually stimulated by watching nude prepubescent children play volleyball. The person goes to a nudist camp or retreat and induces a group of nude children to play volleyball for the person to watch and photograph. In the majority's view of the statute, the person who engaged in that conduct could be found guilty of using children in a display of sexually explicit conduct because, in light

---

[1] The majority claims that *State v. Meyer*, 120 Or App 319, 852 P2d 879 (1993), supports its interpretation of the statute. *Meyer* involved whether the phrase "lewd exhibition of genitals" in ORS 163.665(6) (1989) was unconstitutionally vague. We relied on case law and dictionary definitions of the term "lewd" to conclude that the phrase was not vague, and we interpreted a lewd exhibition to be one that would produce lust or sexual desire in the viewer. *Id.* at 324-26. *Meyer* did not present the issue that this case presents, which is whether lewdness is to be assessed from the perspective of the person inducing the exhibition or from the perspective of the average person viewing it. The statute prohibits exhibitions that are lewd from the latter perspective, not from the former.

of the sexual purpose served by the exhibition, the exhibition constituted a lewd exhibition of the children's genitals.

The proper focus under the statute is on whether the manner in which the children's genitals were displayed would be considered lewd from the perspective of the average person viewing the exhibition. The average person would not consider a volleyball game by nude prepubescent children at a nudist camp to constitute a lewd exhibition of the children's genitals, so the person who induced the children to engage in that conduct could not be found guilty of using the children in a display of sexually explicit conduct.

Any doubt about that issue is dispelled by the legislative history behind the statutes. The 1987 Legislature substantially revised ORS 163.665 through ORS 163.695. Before the 1987 revision, the definition of sexually explicit conduct in ORS 163.665 included "[l]ewd exhibition of the genitals." ORS 163.665(6) (1985). The original draft of the bill that made the 1987 revisions, Senate Bill 364, proposed to replace that definition with three alternative definitions that included the phrase "for the purpose of sexual stimulation of the viewer." For example, one of the alternatives defined sexually explicit conduct to mean

"[e]xhibition of the genital or unclothed pubic or rectal areas for the purpose of sexual stimulation of the viewer." SB 364, § 1 (1987).

Witnesses and committee staff raised questions about the constitutionality of the proposed changes to the definition of sexually explicit conduct. *See, e.g.*, Staff Summary, Senate Committee on Judiciary, SB 364, April 20, 1987, Ex X; Minutes, Senate Committee on Judiciary, May 13, 1987, p 7. In light of those questions, the legislature ultimately decided to amend the bill to keep the reference to "[l]ewd exhibition of the genitals" in the definition but to add the phrase "or anus" to it. *See* Or Laws 1987, ch 864, § 1.[2]

In light of that history, it is apparent that the legislature chose *not* to define the exhibition of genitals in ORS

---

[2] The legislature adopted the current version of the definition in 1995. Or Laws 1995, ch 768, § 4. The 1995 revision did not change the definition in a way that bears on the issue in this case.

163.665 in terms of the purpose of the exhibition. Rather, it chose to continue to define it in terms of the manner in which the exhibition would be viewed by the average person who observed it.

Here, a jury could find that defendant had a sexual purpose behind his effort to get M. to join other family members in being nude within the family home and to dance with M. while she and defendant were nude. However, there is no evidence from which a jury could find that defendant's or M.'s genitals were exhibited to anyone in a lewd manner. In fact, M. testified that defendant directed her the next day to remove her pants and to spread her legs so that defendant could see her genitals because defendant had not been able to see them the night before.

On the record in this case, a jury could not find defendant guilty of using M. in a display of sexually explicit conduct by inducing her to become nude and to dance with defendant while nude. Consequently, I respectfully dissent from the majority's decision to affirm the trial court order that denied defendant's motion for a judgment of acquittal on the charge of using M. in a display of sexually explicit conduct.