Argued and submitted December 28, 2012, affirmed March 26, petition for
review denied August 7, 2014 (355 Or 880)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ALBERT MERRILL SMITH,
*Defendant-Appellant.*

Josephine County Circuit Court
09CR0419, 10CR0323;
A147619 (Control), A147620

322 P3d 1129

Ingrid A. MacFarlane, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Ryan Kahn, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R.

Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Wollheim, Presiding Judge, and Nakamoto, Judge, and Schuman, Senior Judge.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

In this consolidated appeal, defendant appeals from judgments of conviction for two counts of using a child in a display of sexually explicit conduct based on evidence regarding unrecovered photographs of B, his neighbor's daughter, in Case No. 09-CR-0419,[1] and two counts of using a child in a display of sexually explicit conduct based on photographs of A, his second cousin's daughter, in Case No. 10-CR-0323. *See* ORS 163.670(1) (2009).[2] Defendant advances four assignments of error. In his first two assignments of error, defendant challenges the trial court's denial of his motion for judgment of acquittal for the counts involving A and makes a combined argument that the state failed to provide sufficient evidence to support a finding that he compelled or induced A to "participate or engage in sexually explicit conduct," as required by ORS 163.670(1). In his third and fourth assignments, defendant assigns error to the trial court's denial of his motion for judgment of acquittal on the counts involving B and makes a combined argument that the state failed to offer sufficient evidence to support a finding that the unrecovered photographs of B were of sexually explicit conduct, namely a "[l]ewd exhibition of sexual or other intimate parts[,]" as required by ORS 163.665(3)(f) (2009), *amended by* Or Laws 2011, ch 515, § 1.[3] Specifically, defendant contends that "mere nudity" does not constitute a lewd exhibition and that this court's interpretation of lewd exhibition in *State v. Evans*, 178 Or App 439, 37 P3d 227 (2001), *rev den*, 334 Or 76 (2002), was wrong and should be overruled. For the following reasons, we reject defendant's arguments and, therefore, affirm.

---

[1] Defendant was also convicted of two counts of first-degree sexual abuse, ORS 163.427, but does not challenge those convictions on appeal.

[2] ORS 163.670(1) (2009), *amended by* Or Laws 2011, ch 515, § 2, provides:

"A person commits the crime of using a child in a display of sexually explicit conduct if the person employs, authorizes, permits, compels or induces a child to participate or engage in sexually explicit conduct for any person to observe or to record in a photograph, motion picture, videotape or other visual recording."

The 2009 version of ORS 163.670(1) was in effect at the time defendant committed the crimes, therefore, we refer to that version.

[3] The 2009 version of ORS 163.665, which was in effect at the time of the crimes.

In reviewing the denial of a motion for judgment of acquittal, we view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the state to determine whether a rational trier of fact could find that the state proved each element of the offense beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). We state the facts according to that standard.

In 2009, when B was six years old, she reported to her mother that defendant had touched her on several occasions; defendant was 41 years old at the time that B reported the touching. Since 2005, defendant had lived next door to mother and her two children and, over time, mother had gotten to know defendant personally and trusted him to watch B for brief periods of time while B played in defendant's backyard. Mother estimated that defendant was alone with B over 100 times from 2007 to 2009. In July 2009, B and her friend, N, spent the day together in a wading pool at B's apartment and then went into B's bedroom to get dressed and ready for dinner. Mother found the girls in B's bedroom naked and touching each other. Mother told the girls to get dressed immediately and called N's mother to pick her up. After N left, mother asked B if what had happened in the bedroom had ever happened before, and B responded, "Only with [defendant]." Mother asked B what she meant by that statement, and B said that defendant had pulled her pants down, touched her, and photographed her "pee-pee." When mother asked B how many times that had happened, B responded, "A lot."

The next morning, mother called the Women's Crisis Support Team and arranged to meet with a police officer. That same day, Grants Pass Detective Pierce interviewed B at the Grants Pass Children's Advocacy and Treatment Center. During the interview, Pierce asked B if she knew anyone who had a "touching problem," and B responded that defendant had a touching problem and that he had taken pictures of her vagina. B explained that, when she was in defendant's backyard, defendant had pulled down her pants and underwear and made her lie on her back while he took pictures of her. B said that she never saw the photographs because defendant deleted them. B also explained that,

while her clothes were off, defendant touched her vagina with his hand. When Pierce asked her how many times that had happened, B responded that it had occurred more than one time. Pierce also asked B if any part of her body had touched defendant's body, and B recounted that, on different occasions, defendant got on top of her and moved up and down while she was lying on a red mat in his backyard. B also stated that defendant would give her kisses. When asked if defendant ever gave her things, B responded that defendant gave her gum and stickers after he had touched her and taken photographs of her.

After the interview, Pierce, along with some other officers, went to defendant's home to execute a warrant to search defendant's residence, and defendant was home at that time. Pierce asked defendant if he would be willing to speak with her in a police van parked outside while the other detectives searched his house, and defendant agreed. In the van, Pierce advised defendant of his rights and then told him what B had said to her during the interview. In response, defendant admitted to knowing B, but denied taking photographs of B naked, touching her vagina, or taking photographs of B while she was naked, or simulating sexual acts on top of her. Pierce eventually asked defendant if he would continue their conversation at the Grants Pass Sheriff's Office, and defendant agreed.

Meanwhile, the other officers searched defendant's bedroom and found nine computers, several video cameras, at least one digital camera, and five cell phones. The officers discovered "close to 500" photographs of clothed children, many of which depicted young girls. In defendant's bedroom closet, there were items of children's clothing (including young girls' clothing) and toys; defendant did not have any children. The officers seized a fanny pack that defendant was wearing around his waist, containing a small digital camera, and later sent the camera for forensic analysis.

At the sheriff's office, defendant was first interviewed by Detective Auborn. During that interview, defendant admitted that he did, in fact, take photographs of B with her pants and underwear pulled down to her knees and that the photographs were taken about one year before. Although

he had admitted to taking the photographs, defendant again denied touching B, removing her clothing, or having simulated sexual acts on top of her. After defendant spoke with Auborn alone, Pierce came in to follow up with defendant about what he had just admitted to Auborn. During that second interview with Pierce and Auborn, defendant gave some details about the photographs that he had taken of B, explaining that B was naked from the waist down to about her knees, and that he had taken the photographs in the side yard of his house. He also stated that he had deleted the photographs of B and acknowledged that taking the photographs was a "bad idea." At some point during the interview, defendant started talking about other photographs that he had taken of A, his second cousin's daughter, near a swimming pool, but explained that A was clothed in those photographs.

Some time later, the forensic analysis of defendant's digital camera recovered two deleted photographs of A, who was naked from the waist down; A was two years old at the time the photographs were taken. The forensic analysis, however, did not recover any photographs of B.

Defendant was charged by indictment in two separate cases. In Case No. 09-CR-0419, defendant was charged with two counts of using a child in a display of sexually explicit conduct based on defendant "knowingly compel[ling] and/or induc[ing]" B "to participate in sexually explicit conduct" and two counts of first-degree sexual abuse of B. In Case No. 10-CR-0323, defendant was charged with two counts of using a child in a display of sexually explicit conduct for "knowingly compel[ling] and/or induc[ing]" A "to participate in or engage in sexually explicit conduct."

At the consolidated trial, the state introduced a recording of Pierce's interview of B into evidence. B also testified as to defendant's conduct. During her testimony, she stated that defendant had touched her "pee pee" with his hand on more than one occasion and also explained that defendant had pulled off her pants and underwear and taken pictures of her vagina while she was lying down on a red mat. She stated that, after defendant would touch her or take pictures of her, he would give her a piece of gum.

B recounted that, on one occasion, while her clothes were on, defendant had lain on top of her and moved "back and forth." When asked if defendant had ever given her kisses or hugs, B responded that, on one occasion, he had given her a "tongue kiss."

The state submitted the photographs of A into evidence. In those photographs, A was lying on the grass in her backyard next to a wading pool and was naked from the waist down. In one photograph, A was posed looking directly at the camera with her legs partially open, exposing her vagina; A was not smiling in the photograph. The other photograph is similar, except that it was taken from a slightly farther vantage point and A was looking away from the camera. In addition to the photographs of A, the state submitted as evidence approximately 500 photographs of children, children's clothing, and toys that the officers had discovered in defendant's bedroom.

A did not testify at trial, and the state offered no witnesses regarding the taking of those photographs. However, A's mother did testify as to A's relationship with defendant. She explained that defendant stopped by their home every day and often took pictures while he was there. Although A wore diapers during that time, A's mother stated that A always wore clothes in public and would wear a bathing suit when she went swimming in the wading pool in their backyard. To A's mother's knowledge, A was never naked in front of defendant.

With respect to the charges involving A, the defense theory was that defendant did not take any photographs of A. Defendant claimed that A's eight-year-old sister had taken the photographs, and that defendant deleted them once he discovered the photographs on his camera. And, although the state submitted Pierce's interviews of defendant (in which defendant had made incriminating admissions), defendant's theory regarding the charges involving B was that defendant did not take any photographs of B naked and that, during his interview with Pierce and Auborn, he had mistakenly recounted the photographs of A when answering questions about the photographs involving B.

At the close of the state's case, defendant moved for a judgment of acquittal on two grounds. With respect to A, defense counsel contended, among other things, that the state failed to prove that defendant compelled or induced A to participate in sexually explicit conduct:

"There's been no evidence that [defendant] compelled or induced [A] to do anything. All we have is a couple of pictures. At that—and there's—beyond that it's basically speculation or conjecture how she got there. There's no evidence that he took her pants down, there's no evidence that he placed her there, * * * basically the only evidence they have is that this is a deleted picture off of a camera that was seized from him."

With respect to B, defense counsel argued, among other things, that the state failed to prove that, based on evidence of unrecovered photographs, B participated in a display of sexually explicit conduct, which is defined under ORS 163.665(3)(f) to include a "[l]ewd exhibition of sexual or other intimate body parts."

The court denied both motions for judgment of acquittal, stating that, viewing the evidence in the light most favorable to the state, a jury could find defendant guilty. Afterward, the state agreed to submit the case to the jury only on the theory that defendant "induced" A and B to participate or engage in sexually explicit conduct. The jury was instructed to determine whether the state proved, beyond a reasonable doubt, that defendant "knowingly induced" A "to engage in sexually explicit conduct" and that he "knowingly induced" B "to participate in sexually explicit conduct." The jury ultimately found defendant guilty on two counts of using a child in a display of sexually explicit conduct based on the two photographs of A, two counts of using a child in a display of sexually explicit conduct based on evidence regarding the unrecovered photographs of B, and two counts of first-degree sexual abuse for conduct involving B.

On appeal, defendant reprises his arguments below and advances four assignments related to the trial court's denial of his motions for judgment of acquittal on the four counts of using a child in a display of sexually explicit conduct. In his combined argument for his first and second

assignments, defendant contends that, with respect to the counts involving A, the state failed to provide sufficient evidence to support a finding that defendant compelled or induced A to participate or engage in sexually explicit conduct because there was no evidence of the circumstances in which the photographs were taken. In his combined argument for his third and fourth assignments, defendant contends that, with respect to the counts involving B, the state failed to prove that B participated in a lewd exhibition of sexual or other intimate parts.

We begin with defendant's challenge to the trial court's determination that there was sufficient evidence that he compelled or induced A to engage in sexually explicit conduct in violation of ORS 163.670(1). According to defendant, the plain meaning of "compels or induces" requires that a defendant must cause the child to participate or engage in sexually explicit conduct either by force or by persuasion. The state agrees with defendant's construction of the term "induces," and so do we.[4] The parties disagree, however, over whether the state introduced sufficient evidence from which a factfinder could infer that defendant induced A to participate in sexually explicit conduct.

The text of ORS 163.670(1) provides:

"A person commits the crime of using a child in a display of sexually explicit conduct if the person employs, authorizes, permits, *compels or induces* a child to participate or engage in sexually explicit conduct for any person to observe or to record in a photograph, motion picture, videotape or other visual recording."

(Emphasis added.) Although defendant was indicted under both a compulsion theory and an inducement theory, the jury was instructed to determine whether the state proved, beyond a reasonable doubt, that defendant *induced* A to engage in sexually explicit conduct. Accordingly, our analysis is limited to the term "induces."

---

[4] The state contends that "this court need not address the question [of] whether the evidence also supported a finding that [defendant] had 'compelled' the victim to engage in sexually explicit conduct" because the state submitted the case to the jury only on an inducement theory. For that reason, the state does not respond to defendant's construction of the term "compels."

The legislature did not define the term "induces," and we presume that it intended that word to have its "plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). The verb "induce" means "to move and lead (as by persuasion or influence) * * * : prevail upon : INFLUENCE, PERSUADE," "to inspire, call forth, or bring about by influence or stimulation." *Webster's Third New Int'l Dictionary* 1154 (unabridged ed 2002). Based on the plain meaning of induce, a defendant is culpable under ORS 163.670(1) if the defendant persuades or influences the child to participate or engage in sexually explicit conduct.[5]

Based on that definition, the parties dispute whether a factfinder could make a reasonable inference that defendant persuaded or influenced A to pose in the photographs. We have held that, in determining whether a defendant committed the charged acts, "[r]easonable inferences from circumstantial evidence are permissible" but "speculation and guesswork are not." *State v. Hennagir*, 246 Or App 456, 461, 266 P3d 128 (2011), *rev den*, 352 Or 33 (2012) (internal quotation marks omitted). A reasonable inference from the historical facts in evidence may permissibly be drawn "[i]f there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact." *Id.* (internal quotation marks omitted). In the event that historical facts will give rise to more than one reasonable inference, "the jury must decide which of the permissible inferences to draw." *Id.* at 461-62.

Defendant argues that, even if a factfinder could infer that he took the two photographs of A, those photographs, by themselves, do not support a reasonable inference that he induced A to lie on the grass naked from the waist down with her legs partially open, exposing her vagina. Defendant asserts that, because there was no testimony regarding the circumstances in which the photographs were taken, the jury would be required to stack multiple inferences to conclude that defendant persuaded or influenced A

---

[5] The parties did not cite, nor are we aware of, any legislative history that suggests that the term "induces" means anything other than its plain meaning.

to remove her clothing and to pose for the photographs. In the state's view, A's positioning and facial expressions in the photographs suggest that A would not have put herself in that position unless she were influenced by someone else.

After examining the photographs, we conclude that a factfinder could reasonably infer that defendant persuaded or influenced A to engage in sexually explicit conduct. In both photographs, A is wearing a shirt with no pants, her legs are spread slightly apart, displaying her vagina toward the camera, and she is lying on her back with her head against the side of a swimming pool. A factfinder could also reasonably infer, based on A's facial expressions in the photographs, that she would not have posed herself in that position without being persuaded or influenced to do so.

Moreover, the jury heard testimony from A's mother that defendant stopped by A's home every day and took pictures while he was visiting. Although A wore diapers during the time period that the photographs were taken, her mother testified that A always walked around with her clothes on and, to her knowledge, A was never naked in front of defendant. From her mother's testimony, it is reasonable for a factfinder to infer that A would not have been naked in the backyard with defendant near the wading pool unless defendant had persuaded or influenced her. Again, the photographs were recovered from defendant's digital camera, so there is a logical probability that defendant was the person who had persuaded or influenced A to pose in that manner. Therefore, we conclude that a factfinder could reasonably infer from the photographs, along with A's mother's testimony, that defendant persuaded or influenced A to engage in that sexually explicit conduct.[6] Accordingly, we affirm defendant's convictions of two counts of using a child to engage in a display of sexually explicit conduct in Case No. 10-CR-0323.

---

[6] We recently determined whether a photograph of a clothed child standing near a woman engaged in sexual contact with the defendant was sufficient to support a finding that the defendant *permitted* the child to *participate* or *engage* in sexually explicit conduct," under ORS 163.670(1). *See State v. Richardson*, 261 Or App 95, 101, 323 P3d 311 (2014) (emphasis in original). That case, however, did not focus on whether the defendant *induced* the child to participate in a display of sexually explicit conduct.

We now turn to defendant's challenges to the trial court's determination that there was sufficient evidence to support a finding that the unrecovered photographs of B were a display of sexually explicit conduct, as required by ORS 163.670(1). The term "sexually explicit conduct" is statutorily defined to mean actual or simulated:

"(a) Sexual intercourse or deviant sexual intercourse;

"(b) Genital-genital, oral-genital, anal-genital or oral-anal contact, whether between persons of the same or opposite sex or between humans and animals;

"(c) Penetration of the vagina or rectum by any object other than as part of a medical diagnosis or treatment or as part of a personal hygiene practice;

"(d) Masturbation;

"(e) Sadistic or masochistic abuse; or

"(f) *Lewd exhibition of sexual or other intimate parts.*"

ORS 163.665(3) (emphasis added). At trial, the state's theory was that the photographs of B that defendant had described taking, were a "[l]ewd exhibition of sexual or other intimate parts." Although the legislature has not defined lewd exhibition, we have construed it to mean an "exhibition with the intent of stimulating the lust or sexual desires of the person who views it." *State v. Meyers*, 120 Or App 319, 326, 852 P2d 879 (1993).

Defendant contends that testimony describing the unrecovered photographs depicting B with her pants pulled down to her knees, exposing her vagina, is insufficient to prove a lewd exhibition. Specifically, defendant asserts that a photograph that depicts "mere nudity alone" is not a lewd exhibition and, in support of his assertion, urges the court to revisit our divided opinion in *Evans*, 178 Or App 439, and to adopt the dissent's interpretation of lewd exhibition.

In *Evans*, the defendant was convicted of one count of knowingly using a child in a display of sexually explicit conduct. The evidence presented at trial established that, while all the members of the household were present, the

defendant had encouraged everyone to get naked and told his fiancée's eight-year-old daughter to remove her clothing by telling her that she was not part of the family unless she also removed her clothing. The defendant then danced with the girl while they were both naked, with his genitals pressed against her body, and, the next day, the defendant requested that the daughter display her genitals to him. On appeal, the defendant argued that there was no evidence to support a finding that his conduct constituted a "lewd exhibition of sexual or other intimate body parts" under ORS 163.670(1). According to the defendant, there was nothing inherently sexual about the nudity of the entire family, there was nothing graphic about dancing with his fiancée's naked eight-year-old daughter, and, because there was no evidence that the defendant displayed a sign of sexual arousal or gratification, a reasonable factfinder could not conclude that the girl engaged in sexually explicit conduct.

The majority disagreed with the defendant and concluded that a rational factfinder could find that the defendant knowingly induced the girl to engage in a lewd exhibition. 178 Or App at 444. The majority primarily relied on *Meyer*, 120 Or App at 326, a case in which, based on previous case law and dictionary definitions, we interpreted the phrase "lewd exhibition" to mean an "exhibition with the intent of stimulating the lust or sexual desires of the person who views it." Using that definition, we explained that, whether an exhibition is lewd, depends on "the intent of the person charged under the statute." *Evans*, 178 Or App at 445 n 3. We ultimately held in *Evans* that the defendant's conduct and statements the next day constituted additional evidence on which "a rational factfinder could rely to draw an inference as to [the] defendant's scienter." *Id.* at 445.

In his dissent, Judge Armstrong disagreed with the majority and suggested that the proper focus of ORS 163.665(3)(f) is on whether "the manner in which the children's genitals were displayed would be considered lewd from the perspective of the average person viewing the exhibition." 178 Or App at 449 (Armstrong, J., dissenting). Judge Armstrong stated that the majority's reliance on *Meyer* was misplaced because that case did not present the same issue

as *Evans*—*i.e.*, "whether lewdness is to be assessed from the perspective of the person inducing the exhibition or from the perspective of the average person viewing it[,]" *id.* at 448 n 1 (Armstrong, J., dissenting), and determined that, based on the statute's legislative history, ORS 163.665(3) is "focused on the objective nature of the children's conduct, not on the subjective intent of the person who induces the children to engage in the conduct[,]" *id.* at 447 (Armstrong, J., dissenting).

Relying on Judge Armstrong's dissenting opinion, defendant asserts that *Evans* was wrongly decided and that whether something is a lewd exhibition depends on the *objective nature* of the child's conduct, not the subjective intent of the person who induces that conduct. We conclude, however, that, unless the majority opinion in *Evans* is "plainly wrong," we will adhere to it. *Walton v. Thompson*, 196 Or App 335, 343, 102 P3d 687 (2004), *rev den*, 338 Or 375 (2005) (citing *Newell v. Weston*, 156 Or App 371, 380, 965 P2d 1039 (1998), *rev den*, 329 Or 318 (1999)). Last year, we rejected this same argument in *State v. Ritchey*, 257 Or App 291, 304 P3d 51, *rev den*, 354 Or 342 (2013). We again reject the argument that our decision in *Evans* is plainly wrong, and we adhere to our interpretation that a lewd exhibition is one that would produce lust or sexual desire in the viewer, as determined from the perspective of the person charged under the statute.

Returning to the unrecovered photographs of B, we conclude that a jury could infer that the photographs were a lewd exhibition. B explained in her interview with Pierce that defendant pulled down her pants and underwear and took pictures of her while she was lying on her back, exposing her vagina. In addition, B explained that defendant had touched her vagina, given her a "tongue kiss," and, on one occasion, lain on top of her while moving back and forth. From that additional evidence, a jury could infer that, when defendant took pictures of B's vagina, he intended the photographs to stimulate lust or sexual desire of viewers, namely himself. Accordingly, we conclude that the trial court did not err in denying defendant's motion for judgment of acquittal with respect to the charges regarding B and, therefore,

affirm the convictions of two counts of using a child to participate in a display of sexual explicit conduct in Case No. 09-CR-0419.

Affirmed.